USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2052 UNITED STATES OF AMERICA, Appellee, v. DANIEL D. TAVARES, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Jose Antonio Fuste,* U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, Coffin and Campbell, Senior Circuit Judges, ___________ _____________________ Torruella, Selya, Cyr, Boudin and Stahl, Circuit Judges. ______________ ____________________ Owen S. Walker with whom Peter B. Krupp was on brief for ________________ ________________ appellant. Michael J. Pelgro, Assistant U.S. Attorney, with whom Donald K. __________________ _________ Stern, United States Attorney, was on brief for appellee. _____ ____________________ OPINION EN BANC ____________________ ____________________ April 12, 1994 ____________________ ____________________ *Of the District of Puerto Rico, sitting by designation. COFFIN, Senior Circuit Judge. A jury found defendant Daniel ____________________ Tavares guilty of being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). The statute makes it a crime for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."1 At trial, defendant offered to stipulate to the fact that he had such a prior conviction. The prosecutor refused to accept the stipulation. On the basis of our decisions in United States v. Collamore, 868 F.2d 24 (1st Cir. 1989), and ______________ _________ United States v. Donlon, 909 F.2d 650 (1st Cir. 1990), the court _____________ ______ allowed the prosecutor to introduce, in addition to the fact of the prior conviction, evidence of its nature -- larceny of a firearm. A panel of this court, two members concluding that under Collamore and Donlon the district court did not err in allowing _________ ______ the government to reject the stipulation and one member concluding the contrary, unanimously agreed that "the precise issue in our case was not the subject of a focused discussion in the prior decisions, that the issue is an important and recurring one, and that en banc consideration of the issue is appropriate." The full court accordingly granted rehearing and entertained further briefing and argument. We now conclude that the district ____________________ 1Although the predicate crime may not be a felony, the common reference which we adopt is a "felon-in-possession" offense. -2- court abused its discretion in permitting the government to reject the offered stipulation. We set forth only the facts essential for understanding the basic issue that concerns us. The government's evidence at trial indicated that the defendant was involved in three escalating confrontations, culminating with a shooting incident, on the night of August 28-29, 1991, at a Mashpee, Massachusetts apartment complex. The first two confrontations involved acrimonious discussions in which Tavares was accused of stealing a car radio. The government also alleged that Tavares was involved in a third incident, in which he accosted with a gun another acquaintance who had engaged in a discussion with him about the radio theft, and then fired at the outside of this individual's apartment building. Damage was done to two automobiles. Tavares was shortly thereafter seen running in a wooded area and arrested. An officer assisted by a police tracking dog subsequently located a shotgun and rifle in nearby woods. Forensic evidence showed that the shotgun had fired shells found near the damaged cars. Tavares was convicted following a three- day trial. As noted earlier, the prosecutor was allowed to introduce evidence that Tavares had been convicted of a prior crime, larceny of a firearm, and had received a two-year sentence. Our first task is to reexamine our two cases on which the district court relied, Collamore and Donlon, to determine whether _________ ______ -3- they remain compelling authority. As we have indicated, the district court determined that it was constrained under these cases to accord the government the absolute right to reject the defendant's proffered stipulation.2 In Donlon, our more recent opinion, we dealt at length with ______ the defendant's claim that grand jury testimony had been unlawfully admitted at trial. Then, as to a number of secondary issues, we briefly indicated their disposition and our reasoning. On the issue of the government's right to introduce evidence of the nature of the predicate crime, we merely cited Collamore. In _________ Collamore, decided a year earlier, the question before us was _________ whether the court could bifurcate a felon-in-possession trial by requiring the government to prove the possession element of the charge before presenting to the jury proof of the defendant's criminal record. We held that a court may not do so and reversed. We observed that barring the government from presenting any evidence of a prior felony in a felon-in- possession case effectively "eliminated an essential element of the government's case," 868 F.2d at 27, and thus improperly deprived the government of a jury trial on the crime as charged, id. at 28. In support of our conclusion, we added by way of ___ dictum that "even in the face of an offer to stipulate, the ____________________ 2 We note that the court endeavored to minimize any prejudice. It received into evidence a certified copy of Tavares' 1988 conviction, but did not permit the government to read the document to the jury. The court also repeatedly instructed the jury that the evidence was relevant only as proof of the prior felony element of the charge. -4- government may choose to present evidence on the one felony necessary to prove the crime charged," id. at 28. ___ Although we stand by and reaffirm the proposition central in Collamore, that a defendant may not use a stipulation or any _________ other procedural device, including bifurcation, to remove from his felon-in-possession prosecution the fact of his prior ____ conviction, we now realize upon reconsideration that our dictum rested on a shaky foundation. In Collamore, we relied on three _________ cases, two from the Sixth Circuit, United States v. Blackburn, _____________ _________ 592 F.2d 300, 301 (6th Cir. 1979); and United States v. Burkhart, _____________ ________ 545 F.2d 14, 15 (6th Cir. 1976); and one from the Eighth Circuit, United States v. Bruton, 647 F.2d 818, 825 (8th Cir. 1981), which _____________ ______ in turn ultimately relied upon United States v. Brickey, 426 F.2d _____________ _______ 680, 685-86 (8th Cir. 1970).3 The question in Brickey was _______ whether, in proving the crime giving rise to the instant prosecution, the government may be forced to accept a stipulation ("a naked admission") in lieu of presenting a full picture of the events and mind sets in question. The defendant in Brickey _______ had been indicted for mail fraud and sought to stipulate to the fact that he had diverted funds so as to exclude evidence about his personal use of the money. The Brickey panel found no abuse _______ of discretion in the trial court's refusal to require the government to accept the stipulation, and quoted the following ____________________ 3 Burkhart and Bruton actually cited United States v. Smith, 520 ________ ______ _____________ _____ F.2d 544 (8th Cir. 1975), which, in turn, relied upon Brickey. _______ -5- passage from Parr v. United States, 255 F.2d 86, 88 (5th Cir. ____ _____________ 1958): "It is a general rule that `A party is not required to accept a judicial admission of his adversary, but may insist on proving the fact.' 31 C.J.S. Evidence 299, p. 1068. The reason for the rule is to permit a party `to present to the jury a picture of the events relied upon. To substitute for such picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.'" 426 F.2d at 686. Brickey, the sole underpinning of the cases on which we _______ relied in Collamore, is critically different from the case before _________ us. While the stipulation there concerned facts directly relevant to the instant crime, the case before us involves a stipulation to facts establishing only the defendant's status. This difference is so significant that we no longer deem Collamore's dictum to be compelling in cases such as this. _________ As we now reconsider the issue fully, we begin our analysis by reiterating its limited scope. A decision to honor a stipulation concerning the predicate crime in a felon-in- possession case in no way trenches upon the right of the prosecution to make a full presentation of the crime currently charged. We fully concede the government's "right to `present to the jury a picture of the events relied upon,'" United States v. _____________ Doherty, 675 F. Supp. 714, 717 (D. Mass. 1987), aff'd in part and _______ _________________ rev'd in part, 867 F.2d 47 (1st Cir. 1989), including proof of ______________ all elements of the crime for which the defendant has been brought to trial. The prosecution ordinarily may not be forced to eliminate gruesome details of a killing, the quantity of -6- drugs, or the degree of malevolence exhibited by the defendant through a defense-proffered stipulation. This well-established right of the government to present its case as it sees fit is in no fashion weakened by requiring a stipulation to establish the defendant's status as a felon. The status element is a discrete and independent component of the crime, a requirement reflecting a Congressional policy that possession of a firearm is categorically prohibited for those individuals who have been convicted of a wide assortment of crimes calling for a punishment of over a year's imprisonment. A defendant falls within the category simply by virtue of past conviction for any crime ranging from possession of short lobsters, see 16 U.S.C. 3372, to the most aggravated murder. ___ The predicate crime is significant only to demonstrate status, and a full picture of that offense is -- even if not prejudicial -- beside the point. This is not a situation in which there is only one way to prove this status, e.g., by the full record conviction including the nature of the offense. Other ways include a redacted record, testimony by a clerk, stipulation, a defendant's affidavit, or even, in the absence of controversy, judicial notice of the prior conviction. None of these alternatives is tainted by the inclusion of the prejudicial information. The government suggests that, beyond establishing status, the predicate crime serves to crystallize the culpability of the defendant as a serious offender. It asserts that knowledge of -7- the nature of the predicate crime in this way bears on the jury's ability to evaluate the defendant's guilt on the felon-in- possession charge, and thus is relevant to its deliberations. We fail to see this connection. Relevant evidence, we are told by Federal Rule of Evidence 401, "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The fact concerning defendant's prior criminal record that 922(g)(1) explicitly makes "of consequence" is whether it includes a crime carrying a penalty of more than a year's imprisonment. It does not embrace additional facts such as a particular kind of felony. Congress required no gradation for seriousness, numerosity or recency, although such distinctions have in other contexts been given significance. See, e.g., 18 U.S.C. 924(c) (penalizing use of ___ ____ firearm in connection with crime of violence or drug trafficking crime); 924(e)(1) (increasing firearms possession penalty for defendant convicted of multiple violent felonies or "serious" drug offenses). In effect, we understand the government to claim relevance in revelation of a crime that is particularly egregious (murder), socially opprobrious (pornography), systemically dangerous (organized crime), or similar to the crime occasioning the present prosecution (possession of firearms). It is, of course, highly likely that such evidence would influence the jury's perception of the defendant, suggesting that he is a sufficient -8- threat to society to warrant additional incarceration. Such information, however, has no tendency to make more or less probable the existence of the fact of a prior conviction, which ________ is the only information that Congress has deemed of consequence concerning the defendant's criminal record. And it is precisely the tendency of such evidence to prejudice the jury's deliberations that makes it suspect. Moreover, the government's right to introduce the nature of a particularly prejudicial prior felony would have to be matched by the defendant's right to introduce evidence that his prior conviction was for a technical, nonviolent or white collar crime. In such a case, the jury might tend to minimize the defendant's culpability and be less inclined to impose the severe penalty associated with a felon-in-possession conviction. This would be no more appropriate than the reverse tendency. Either way, Congressional policy would be subverted. The neutral role intended to be played by the prior felony element of 922(g)(1) would be replaced by a two-tier system of guilt determination. Additionally, because the nature of the predicate felony is wholly unrelated to the crime for which the defendant is on trial, excluding the extraneous information concerning its nature should create no burden for either the court or the government. The defendant's unadorned stipulation could be read to the jury or, if the government preferred, a redacted judgment of conviction could be introduced into evidence. Severing the -9- admissible evidence from the inadmissible thus would require neither sensitive nor difficult judgments. We have focused here only on the kind of case represented at bar, where there exists no reason, other than the government's desire to color the jury's perception of the defendant's character, for revealing the nature of the defendant's prior felony. Although we cannot now conceive of circumstances in which the probativeness of the facts surrounding the prior conviction would outweigh the prejudice to the defendant from admission of those details, there may be permutations that presently escape our vision. We therefore do not announce a per se rule of exclusion. Even in such unusual circumstances, however, evidence beyond the fact of the prior conviction is inadmissible absent adequate trial court findings that its noncumulative relevance is sufficiently compelling to survive the balancing test of Fed. R. Evid. 403. ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). Our conclusion on this issue is supported by a considerable number, though not all, of the other circuits. The Eleventh Circuit applies the same abuse of discretion standard that we adopt today. See United States v. O'Shea, 724 F.2d 1514, 1516-17 ___ _____________ ______ (11th Cir. 1984). The D.C. Circuit also has held in a felon-in- possession case that "the Government's right to introduce its proof is always subject to the trial court's responsibility under Fed. R. Evid. 403 to limit unduly prejudicial or cumulative -10- evidence." See United States v. Dockery, 955 F.2d 50, 54 (D.C. ___ _____________ _______ Cir. 1992). And the Fifth and Tenth Circuits similarly have recognized the district court's authority to decide on the admissibility of prior crimes evidence. See United States v. ___ _____________ Brinklow, 560 F.2d 1003, 1006 (10th Cir. 1977) (case involving ________ interstate transportation of explosives by a convicted felon); United States v. Spletzer, 535 F.2d 950, 955-56 (5th Cir. 1976) _____________ ________ (case involving escape). The Second and Fourth Circuits affirmatively reject admission of evidence concerning the nature of the prior crime, see United States v. Gilliam, 994 F.2d 97, 103 (2d Cir. 1993); ___ _____________ _______ United States v. Poore, 594 F.2d 39, 41-43 (4th Cir. 1979), while _____________ _____ panels in both the Ninth and Seventh Circuits have signalled that it is within a court's discretion to accept a defense stipulation to the fact of a prior felony conviction, see United States v. ___ _____________ Barker, 1 F.3d 957, 959 n.3 (9th Cir. 1993) (underlying facts of ______ prior conviction irrelevant); United States v. Pirovolos, 844 ______________ _________ F.2d 415, 420 (7th Cir. 1988) (defense's proffered stipulation to prior felony sufficient). But see United States v. Breitkreutz, ___ ___ _____________ ___________ 8 F.3d 688, 692 (9th Cir. 1993) (rejecting stipulation as an alternative form of proof and noting "the rule that the prosecution has a right to refuse a stipulation").4 On the ____________________ 4 In concurring in Breitkreutz, Judge Norris noted that the ___________ majority's assumption that the nature of the past conviction is relevant in a 922(g) prosecution conflicted with Barker. 8 ______ F.3d at 693. -11- other side, as noted earlier, are the Sixth and Eighth Circuits.5 We want to be crystal clear about what we are not saying. First, we are not saying that the fact of the prior predicate ____ felony can be kept from the jury. Second, the prosecution ordinarily cannot be forced to accept a stipulation if it prefers to introduce a judgment of conviction properly redacted. The trial court would retain the discretion, however, to exclude this document if the nature or number of redactions would invest it with prejudicial overtones. In some circumstances, where documentary evidence is unavailable, properly circumscribed oral testimony would be permissible. Third, in response to the government's apprehension that a defendant might, in closing argument or otherwise, insinuate that the prior felony conviction was benign, we note the inappropriateness of limiting our options based upon a concern that counsel irresponsibly would contrive to abuse our chosen procedure. We add that any such conduct would be subject to the trial court's sanctioning power. We have every confidence in the court's ability to convey in neutral fashion both Congress's determination that any prior felony provides a sufficient basis for subsequent punishment for possession of firearms, and the ____________________ 5 The decision of the Third Circuit in United States v. Williams, _____________ ________ 612 F.2d 735, 740 (3d Cir. 1979), also facially supports the government's position. The stipulation at issue there, however, concerned the fact of the prior conviction, and the decision ____ therefore simply may reflect agreement with our conclusion in Collamore that a defendant may not modify a statute by _________ eliminating one of its elements from the jury's consideration. -12- jury's obligation to accept that judgment and not speculate on the nature of the earlier crime. Fourth, we acknowledge that in some cases evidence concerning the nature of the prior conviction will be admissible for impeachment or other reasons, despite its lack of probative value on the prior conviction element of the crime. See O'Shea, ___ ______ 724 F.2d at 1516-17. Finally, we reject the notion that the course we set here is a risky one, setting the stage for similar reasoning to be applied in contexts where greater hazards might lie. In the first place, a stipulation to a defendant's status as a felon is easily and obviously distinguishable from those relating to his actions or state of mind in committing the crime. In the second place, the evidence we exclude has no legitimate claim to relevance. In the third place, the unnecessary risk of unfair prejudice looms as clear and likely in this context. Finally, our holding allows the trial court to recognize and articulate any special circumstances justifying admission of evidence of the nature of the predicate offense. In this case, the government has added the claim that admitting evidence of the nature of the predicate crime, if error, was harmless. We cannot agree. The government's case rested heavily on the testimony of two witnesses, Blake and Hunt, who identified Tavares as the gun-wielding assailant. Tavares's defense strategy relied on challenging the credibility of these witnesses and suggesting that the actual perpetrators were -13- connected to Blake's drug dealing. The fact that defendant's prior conviction involved the unlawful acquisition of a firearm could not help but influence the jurors' attitude toward his claim that, this time, someone else had the gun. See United ___ ______ States v. Torres, 610 F. Supp. 1089, 1093 (E.D.N.Y. 1985) (in ______ ______ felon-in-possession case, evidence of prior convictions for manslaughter with a gun and illegal possession of a gun "would surely prejudice almost any jury, no matter how conscientious"). Adding to our conviction that the error was harmful is the fact that two close evidentiary points were resolved against the defendant, resulting in admission of other prejudicial facts about his criminal disposition. Over defendant's objection, the court allowed testimony from a witness who claimed to have seen defendant steal the car radio and testimony about defendant's destructive behavior at the police station after his arrest. Whether or not this evidence was properly allowed,6 there is little doubt that the inadmissible testimony concerning Tavares's prior felony added fuel to an already brewing fire and increased the risk that the jury drew upon defendant's disposition in reaching its verdict. In these circumstances, we cannot say that "it is `"highly probable"' that the error did not ____________________ 6 Both the eyewitness testimony explicitly identifying Tavares as the radio thief and the testimony about defendant's police station behavior create some risk of injecting unfair prejudice for the defendant without adding significant weight to the prosecution's case. If the government seeks to re-introduce this evidence in a new trial, we urge the district court to "remain vigilant" as to whether it survives the Rule 403 balancing, see ___ United States v. Williams, 985 F.2d 634, 638 (1st Cir. 1993). _____________ ________ -14- contribute to the verdict," United States v. Figueroa, 976 F.2d _____________ ________ 1446, 1455 (1st Cir. 1992) (citations omitted). The judgment of conviction is therefore VACATED, and the ____________________________________________________________ case remanded to the district court for a new trial. ____________________________________________________ Concurrence follows. -15- SELYA, Circuit Judge, with whom Campbell, Senior Circuit _____________ _______________ Judge, joins (concurring). I write separately, not because I _____ harbor reservations about the result reached in this case, but because I fear that the court's opinion may be read by some to recalibrate the balance that Fed. R. Evid. 403 demands. I have three qualms. First: I think that the court, in endeavoring to First: _____ distinguish between the fact of a prior conviction and the basic facts necessary to give that conviction content, suggests an uncomfortably cramped and somewhat artificial definition of relevance. In my view, the disputed evidence is relevant albeit perhaps marginally so but nonetheless inadmissible under a proper application of Rule 403. Second: I question the court's approach to Rule 403 in this Second: ______ situation. The rule does not state, nor should it be construed to mean, that prejudicial evidence may be admitted at trial only if its harmful effect is substantially outweighed by its relevance. Rather, the presumption works the other way, mandating the admissibility of relevant evidence unless good reason appears for its exclusion. See United States v. Foley, ___ ______________ _____ 871 F.2d 235, 238 (1st Cir. 1989). The court here seems to reverse this presumption, see, e.g., ante at 8, 10, thereby ___ ____ ____ putting the shoe on the wrong foot. Third: I fervently believe that the Rule 403 balance is Third: _____ best struck on a case by case basis, and that, in almost all instances, the strikers of the balance should be the district -16- courts as opposed to the court of appeals. See, e.g., Freeman v. ___ ____ _______ Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988) ("Only _________________ rarely and in extraordinarily compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect."). I worry that today's opinion undervalues this discretion and that the court's words, though correct in the context of the case before us, may be taken by some as a command that will prompt the district courts to micro-manage trials and thereby dispense justice of a superficial variety (which is to say, dispense injustice). In the last analysis, a trial is not an exercise in computer science, but, rather, a recreation of flesh-and-blood events for the edification of the factfinder. The law is not so fastidious as to demand that all taste be squeezed from a piece of evidence before a jury can chew on it. To the contrary, although "[a] controlled environment for the reception of proof is essential, . . . an artificially sterile environment is neither necessary nor desirable." Wagenmann v. Adams, 829 F.2d 196, 217 (1st Cir. _________ _____ 1987). In sum, while I agree that this is the rare situation in which evidence, though relevant, is unfairly prejudicial and must be excluded, and while I share many of Judge Coffin's sentiments, I think the district courts would be well advised to avoid any attempt to extrapolate a general rule from the court's case- specific holding. -17-