27 F.3d 703
 39 Fed. R. Evid. Serv. 647
 UNITED STATES, Appellee,
v.
James F. MELVIN, Defendant, Appellant.
UNITED STATES, Appellee,
v.
Michael C. HABICHT, Defendant, Appellant.
UNITED STATES, Appellee,
v.
Patrick J. NEE, Defendant, Appellant.
UNITED STATES, Appellee,
v.
Robert Emmett JOYCE, Defendant, Appellant.
UNITED STATES, Appellee,
v.
James M. MURPHY, Defendant, Appellant.
UNITED STATES, Appellant,
v.
Michael C. HABICHT, Defendant, Appellee.
UNITED STATES, Appellant,
v.
Robert Emmett JOYCE, Defendant, Appellee.
UNITED STATES, Appellant,
v.
James F. MELVIN, Defendant, Appellee.
UNITED STATES, Appellant,
v.
James M. MURPHY, Jr., Defendant, Appellee.
UNITED STATES, Appellant,
v.
Patrick J. NEE, Defendant, Appellee.
UNITED STATES, Appellee,
v.
Michael O. McNAUGHT, Defendant, Appellant.
UNITED STATES, Appellant,
v.
Michael O. McNAUGHT, Defendant, Appellee.
 Nos. 92-1563--92-1567, 92-1642--92-1646, 92-1724 and 92-1725.
 United States Court of Appeals,
First Circuit.
 Heard Dec. 7, 1993.
Decided April 22, 1994.
 
 Martin G. Weinberg, by appointment of the Court, with whom James W. Lawson and Oteri, Weinberg & Lawson, Boston, MA, were on brief for appellant James F. Melvin.
 Judith H. Mizner, Newbury Port, MA, by appointment of the Court, for appellant Michael C. Habicht.
 Kenneth J. Fishman, with whom Peter Charles Horstmann, Bailey, Fishman & Leonard and Anthony M. Cardinale, Boston, MA, were on brief for appellants Patrick J. Nee and Michael O. McNaught.
 Kimberly Homan, with whom Sheketoff & Homan, Boston, MA, was on brief for appellant Robert Emmett Joyce.
 Lawrence Rizman, Boston, MA, by appointment of the Court, with whom James M. Murphy pro se, was on brief for appellant James M. Murphy.
 James B. Farmer, Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., Stephen P. Heymann, Asst. U.S. Atty. and James D. Herbert, Asst. U.S. Atty., Boston, MA, were on brief for appellee.
 Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.
 TORRUELLA, Circuit Judge.
 
 
 1
 In this case, James F. Melvin, Michael C. Habicht, Patrick J. Nee, Robert Emmett Joyce, James M. Murphy, Jr., and Michael O. McNaught challenge their convictions and sentences in connection with an attempted armored truck robbery in Abington, Massachusetts, following a jury trial in the district court.[1] The Government charged each defendant with violating 18 U.S.C. Sec. 922(g), being felons-in-possession of firearms,[2] in addition to charges related to alleged conspiracies and attempts to rob bank funds. In seeking to prove that defendants were felons-in-possession, the Government presented to the jury otherwise inadmissible evidence regarding each of the defendants' previous felony convictions. Because we believe that this unduly prejudiced the defendants' right to a fair trial, we reverse.I. FACTUAL BACKGROUND
 
 
 2
 The testimony and other evidence properly introduced at trial, viewed in the light most favorable to the verdicts, established the following facts. See United States v. Rivera-Santiago, 872 F.2d 1073, 1078-79 (1st Cir.), cert. denied, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).
 
 A. The Abington Robbery
 
 3
 The Boston Police Department and the FBI commenced an investigation of armored truck robberies in approximately January 1990. David Ryan, a paid confidential government informant, and the government's principal witness at trial, aided in the investigation.
 
 
 4
 Ryan had initially contacted Joyce in late 1989. In January 1990, Joyce asked Ryan if Ryan knew anyone working in the armored car business, and Ryan replied that he did. The two men then discussed a number of possible armored truck robberies over approximately the next ten months.
 
 
 5
 On or about December 5, 1990, Ryan told Joyce that he had an inside man riding a Transfer Service Incorporated ("TSI") armored truck on the South Shore, which included the Abington route. Ryan stated that his man was willing to be a partner in the theft of money, and would guarantee that the doors of the armored truck would be open for six minutes so that Joyce and his colleagues could grab the money. On December 18, 1990, Ryan told Joyce that the Abington route would be off for two weeks, making January 9, 1991 the next day that the Abington schedule would be "on."
 
 
 6
 On Wednesday, January 9, 1991, at approximately 11:00 a.m., FBI agents and the police arrested all six defendants in Abington. The police arrested Joyce, McNaught, and Nee in a red Dodge Caravan ("the van"), in the parking lot of Trucchi's Market, approximately one block from the Bank of New England. Melvin was arrested on foot a short distance from the van in the parking lot. The police found six guns in the van.
 
 
 7
 The police arrested Habicht and Murphy at approximately the same time in a Buick LeSabre ("the LeSabre") parked approximately one block away from the van. During the course of the morning, the police had observed the LeSabre traveling on Route 139 in front of the Bank of New England, and also along the route which the armored truck would take in making its delivery to the bank. The LeSabre did not contain any guns.
 
 
 8
 Joyce testified at trial. Joyce admitted that he and his codefendants had intended to steal the money on the TSI armored truck. He denied, however, that they intended to use weapons in doing so. He testified that he believed that a corrupt employee on the truck was going to give up the money without force. Joyce testified that he and the defendants in the van had discovered the weapons only moments before their arrests, when Joyce opened a bag which he believed contained car theft tools, and which had been given to him two days before by Ryan. According to Joyce, after they discovered the guns, the defendants called off their attempted theft.
 
 
 9
 McNaught also testified that he believed that the Abington theft was to have been an "inside" job. According to McNaught, he was expressly told that no weapons were going to be involved, and that this was going to be a non-violent theft of money. McNaught also testified that on January 8, 1991, the day before the robbery, he and his five codefendants had met in Norwell, Massachusetts, and had driven around for six hours in Melvin's car as they viewed the area, during which Joyce and Murphy led discussions planning for the theft. McNaught testified that there was no mention of the use of firearms as part of the plan.
 
 B. The Legal Proceedings
 
 10
 The six defendants, in varying combinations, were indicted with respect to conspiracies to rob armored trucks in Abington, as well as in Fitchburg, Massachusetts and Methuen, Massachusetts. A jury trial then ensued. With respect to the attempted armored truck robbery at Abington, all six defendants were found guilty of conspiracy to rob bank funds in violation of 18 U.S.C. Sec. 371 (Count 10), attempted robbery of bank funds in violation of 18 U.S.C. Sec. 2113(a) (Count 11), attempted obstruction of commerce by robbery in violation of the Hobbs Act, 18 U.S.C. Sec. 1951 (Count 13), knowingly using or carrying firearms during and in relation to a crime of violence in violation of 18 U.S.C. Sec. 924(c) (Count 14), and being felons knowingly in possession of firearms in violation of 18 U.S.C. Sec. 922(g) (Count 15).
 
 
 11
 With respect to the earlier armored truck robbery in Fitchburg, which occurred on May 31, 1989, Murphy was convicted of bank robbery and conspiracy to rob bank funds in violation of 18 U.S.C. Sec. 2113(a) (Counts 3 and 4), and obstruction of commerce by robbery in violation of the Hobbs Act, 18 U.S.C. Sec. 1951 (Count 6). Joyce was the only other defendant charged with respect to the Fitchburg counts, and the jury found him not guilty on each count.[3] The defendants now appeal.
 
 COUNT 15: 18 U.S.C. Sec. 922(g)(1)
 
 12
 Prior to and during trial, all six defendants moved for severance of Count 15, which charged them with possessing firearms in Abington after previously being convicted of offenses punishable by more than one year in prison, in violation of 18 U.S.C. Sec. 922(g)(1). Alternatively, if the court was disinclined to sever Count 15, the defendants offered to stipulate that each had been convicted of a prior felony, without disclosing the nature of that conviction to the jury. The court denied the defendants' motion to sever, and, referring to this Circuit's decisions in United States v. Donlon, 909 F.2d 650 (1st Cir.1990) and United States v. Collamore, 868 F.2d 24, 29 (1st Cir.1989), permitted the Government to reject defendants' proffered generic stipulation that they had each previously been convicted of an unspecified felony. The court instead permitted the Government to introduce evidence of the defendants' previous felony convictions through a stipulation which stated the prior offense for which each defendant had previously been convicted. The stipulation stated that the previous convictions of Habicht, McNaught, Murphy, Melvin and Nee involved a firearms offense, and that Joyce had previously been convicted of a stolen check offense. The defendants agreed to the stipulation, although they registered their objections with the court to the effect that they essentially were being required by the court to so stipulate.
 
 
 13
 On appeal, the defendants contend that the joint trial of Count 15 unfairly prejudiced the jury's determination of Counts 1-14, which stemmed from the alleged conspiracies and attempts to commit armed robberies, and Count 15 itself. The defendants argue that severance was particularly appropriate in this instance because the jury was instructed to determine whether the defendants intended to use force or violence on January 9, 1991 during the Abington robbery. The defendants contend that the evidence of prior firearms convictions unfairly directed the jury's attention to the defendants' propensity for committing firearms crimes. The defendants also argue that the court erred by permitting the Government to introduce evidence of the nature of their prior convictions. They stress that the court could have eliminated any unfair prejudice by requiring the Government to accept their generic stipulation.
 
 
 14
 We analyze defendants' appeal in light of our recent en banc decision in United States v. Tavares, 21 F.3d 1 (1st Cir.1994).[4] In Tavares, the defendant allegedly accosted an acquaintance with a gun, and then fired shots at the outside of this individual's apartment building, damaging two automobiles. Id., at 2. Tavares was then seen running in a wooded area and arrested. Id. The police subsequently located a shotgun and rifle in the woods, and forensic evidence showed that the shotgun had fired the shells found near the damaged cars. Id. The Government then charged the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g). Id. During the trial, Tavares offered to stipulate to the fact that he had a prior unspecified conviction. Id., at 2. The prosecutor refused to accept the stipulation, and on the basis of Collamore and Donlon, the court allowed the prosecutor to introduce evidence that Tavares had been convicted of a prior crime, larceny of a firearm, and had received a two-year sentence. Id.
 
 
 15
 On appeal, we reexamined our previous decisions in Collamore and Donlon, which stated that when a defendant is charged with violating 18 U.S.C. Sec. 922(g), "even in the face of an offer to stipulate, the government may choose to present evidence on the one felony necessary to prove the crime charged." Collamore, 868 F.2d at 28. We noted that the precise issue of whether the Government could introduce evidence of the nature of the prior conviction was not the subject of a focused discussion in those two decisions, and then concluded that the court abused its discretion in permitting the prosecutor to reject Tavares' proffered stipulation. Tavares, at 2-3. While acknowledging the Government's general right to present to the jury proof of all elements of the crime for which the defendant had been brought to trial, we stated that a decision to honor a generic stipulation concerning the predicate crime in a felon-in-possession case did not interfere with this right. Id., at 3. In a felon-in-possession case, the element involving defendant's status as a felon is a discrete and independent component of the crime which reflects a Congressional policy that possession of a firearm is categorically prohibited for those individuals who have been convicted of a wide assortment of crimes calling for a punishment of over one year's imprisonment. Id., at 3-4. The only fact concerning the defendant's prior criminal record that Sec. 922(g)(1) explicitly makes "of consequence" is whether the record includes a crime carrying a penalty of more than a year's imprisonment. Id., at 4. Section 922(g)(1) does not embrace additional facts such as the particular kind of felony of which defendant was convicted. Such facts are irrelevant to establishing the defendant's status. Id., at 4. Moreover, evidence regarding the nature of the prior felony is precisely the type of evidence which prejudices a jury. Id. We held that when a defendant is charged with being a felon-in-possession in violation of 18 U.S.C. Sec. 922(g), evidence of the nature of a prior conviction is not admissible, unless the trial court identifies special circumstances of the case which establish that the relevance of the evidence is "sufficiently compelling to survive the balancing test of Fed.R.Evid. 403." Id., at 5.
 
 
 16
 Our holding in Tavares applies to the instant case. All six defendants offered to stipulate that each had previously been convicted of an unspecified felony. The Government refused to accept the stipulation. The court, indicating that it was constrained by Collamore and Donlon, permitted the Government to offer a stipulation specifying precisely what felony each defendant had previously been convicted of. Tavares compels us to find that the court abused its discretion when it permitted the Government to reject the defendants' proffered generic stipulation, and instead introduce a stipulation which specified the nature of each defendant's prior felony.
 
 
 17
 In Tavares, we stated that evidence of the nature of a defendant's prior conviction could be admitted if the court identified special circumstances showing that the relevance of the evidence outweighed any likely prejudice. Because the trial in the instant case occurred before Tavares was decided, we cannot require such an express finding by the court. We do not believe, however, that the record indicates that the court would have made such a finding. First, the court repeatedly indicated that it was bound by Collamore and Donlon to permit the Government to introduce evidence regarding the nature of the defendants' previous felony convictions. Second, the Government attempted to introduce evidence of the defendants' previous felony convictions under Fed.R.Evid. 404(b), but the court refused to admit the evidence finding that its prejudice outweighed any possible relevance. Given these circumstances, we are confident that had the court had the benefit of Tavares, it would have required the Government to accept the defendants' proffered generic stipulation.
 
 
 18
 We must now determine whether admitting evidence of the prior convictions was harmless, or whether it warrants reversal of defendants' convictions. "In determining whether or not error was harmless, a reviewing court must assess the record as a whole to determine the probable impact of the improper evidence upon the jury." United States v. Spinosa, 982 F.2d 620, 630 (1st Cir.1992) (citation omitted). An error will be treated as harmless only if it is "highly probable" that the error did not contribute to the verdict. Id.; United States v. Arias-Montoya, 967 F.2d 708, 714 (1st Cir.1992); United States v. Gonzalez-Sanchez, 825 F.2d 572, 579 (1st Cir.), cert. denied, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). We cannot, and will not, strain to characterize an error as harmless.
 
 
 19
 The inquiry cannot be merely whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.
 
 
 20
 Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).
 
 
 21
 As a general matter, we emphasize that a defendant's interest in avoiding the introduction of evidence of prior crimes is obvious.
 
 
 22
 "The exclusion of other crimes evidence is not simply a 'technicality' designed to prevent law enforcement personnel from doing their job; it reflects and gives meaning to a central precept of our system of criminal justice, the presumption of innocence." United States v. Daniels, 770 F.2d 1111, 1118 (D.C.Cir.1985). The primary concern is that prior crimes evidence "weigh[s] too much with the jury ... and overpersuade[s] them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."
 
 
 23
 United States v. Dockery, 955 F.2d 50, 53 (D.C.Cir.1992) (quoting Michelson v. United States, 335 U.S. 469, 476, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948)). See generally United States v. Gilliam, 994 F.2d 97, 103 (2d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993); United States v. Spletzer, 535 F.2d 950, 955-56 (5th Cir.1976). The prejudicial nature of evidence of prior convictions is clear and compelling, in that it indelibly marks a defendant as a lawbreaking menace.
 
 
 24
 In this case, the nature of the other offenses charged against the six defendants and the premise of their defense increased the level of prejudice that normally accompanies prior crimes evidence. Through its stipulation, the Government presented evidence that five of the six defendants had previously been convicted of firearms related offenses. The Government also reiterated the fact that the defendants had previous firearms convictions during other portions of its case. The Government portrayed the defendants in its opening as a gang of professional armed car robbers. The Government also referred to the defendants' previous firearms convictions in its closing argument to the jury.
 
 
 25
 With respect to the Abington attempted armed robbery charges, the jury was instructed to determine whether the defendants intended to use force or violence on January 9, 1991. Intent to use force or violence was thus an element of proof as to each count which the defendants expressly disputed. The defendants contended that they had only planned to commit a non-violent theft of money from the TSI armored truck, with the aid of an inside man on board who had previously agreed to aid them for 15% of the "take." The jury's perception of the defendants' propensity to use firearms was therefore central to their defense. The defendants' ability to present their "theft" defense to the jury, however, was undermined from the embryonic stages of the trial by the fact that the Government had already branded them as a band of felons with a history of resorting to the use of firearms. Cf. United States v. Poore, 594 F.2d 39, 41 (4th Cir.1979) (finding that evidence of a prior gun offense clearly prejudiced defendant's trial on charges of illegally possessing a firearm and being a felon-in-possession). This evidence of prior convictions would prejudice almost any jury in these circumstances, no matter how conscientious.[5] See generally United States v. Pisari, 636 F.2d 855, 859 (1st Cir.1981); United States v. Fosher, 568 F.2d 207, 211 (1st Cir.1978).
 
 
 26
 Finally, we underscore the fact that the trial court considered the admissibility of prior convictions separately under Fed.R.Evid. 404(b), and found that the prejudice resulting from the evidence's admission outweighed its relevance.[6] We have often stated that Fed.R.Evid. 404(b) determinations are entrusted to the sound discretion of the trial court, and we will rarely reverse a trial court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect from the vista of a cold appellate record. United States v. Hadfield, 918 F.2d 987, 995 (1st Cir.1990), cert. denied, 500 U.S. 936, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991). Here, the trial court undertook this very balancing task and concluded that the prejudicial value of admitting the defendants' prior convictions outweighed the minimal relevance of the evidence. We refuse to disturb this determination.
 
 
 27
 We believe that the admission of the evidence of the nature of the defendants' prior convictions substantially influenced the verdicts in this case. Therefore, we are compelled to find that admitting the stipulation specifying the nature of the defendants' prior convictions constituted reversible error.[7]
 
 
 28
 The judgments of conviction are therefore REVERSED, and the case remanded to the district court for a new trial. In light of this disposition, the Government's appeal of the defendants' sentences is dismissed as moot.
 
 
 
 [1]
 Defendant Murphy was also convicted of conspiracy to rob bank funds and obstruction of commerce by robbery in violation of the Hobbs Act with respect to an armored truck robbery in Fitchburg, Massachusetts
 
 
 [2]
 Under 18 U.S.C. Sec. 922(g)(1), the government must prove that 1) the defendant was previously convicted of an offense punishable by imprisonment exceeding one year; and 2) he knowingly possessed a firearm in or affecting interstate commerce. United States v. Wight, 968 F.2d 1393, 1397 (1st Cir.1992). The statute does not require that the prior conviction be a felony; rather, the statute only requires that the offense be punishable for a term exceeding one year. We will refer to the offense throughout this opinion, however, as it is commonly known, being a "felon-in-possession."
 
 
 [3]
 The jury found both Murphy and Joyce not guilty of a Hobbs Act conspiracy charge (Count 5) and knowingly using or carrying firearms during and in relation to a crime of violence (Count 7) in connection with the Fitchburg robbery
 In Counts 1 and 2 of the indictment, Joyce and Murphy were charged with RICO and RICO conspiracy stemming from the Fitchburg robbery and the Abington robbery attempt. The jury found Joyce not guilty on the two RICO counts, but was unable to reach a verdict with respect to Murphy on these two counts.
 Habicht, Joyce, Melvin, and Murphy were also charged with conspiracy to rob an armored truck in Methuen, Massachusetts. With respect to these charges, the jury found all four defendants not guilty of conspiracy to rob bank funds, in violation of 18 U.S.C. Sec. 371 (Count 8), and conspiracy to obstruct commerce by robbery, in violation of the Hobbs Act (Count 9).
 All six defendants were found not guilty of a Hobbs Act conspiracy charge relating to the Abington incident (Count 12).
 
 
 [4]
 Our decision in Tavares applies retroactively to cases still pending on direct review. In Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), the United States Supreme Court held that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review, with no exceptions for cases in which the decision constitutes a clear break with the past. Although Griffith involved a constitutional rule of procedure, a criminal defendant whose case is still pending on direct appeal is also entitled to claim the protection of important statutory rights and procedural rules, when the notion of trial accuracy is at issue. United States v. Lopez-Pena, 912 F.2d 1542, 1545 (1st Cir.1989), cert. denied, 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991). See, e.g., United States v. Ochs, 842 F.2d 515, 519-20 (1st Cir.1988). The Tavares rule, which attempts to ensure that defendants receive a fair trial, is precisely the kind of holding that requires retroactive application
 
 
 [5]
 Joyce's prior conviction involved a stolen check offense. The nature of this prior conviction is less prejudicial in the context of the charges in this case. During the trial, however, the Government grouped the defendants together as a gang of professional armed robbers. Based upon the specific facts of this case, we find that the established error with regard to admitting Joyce's codefendants' prior firearms convictions infected Joyce's trial, even though his own prior felony conviction was not a firearms conviction
 
 
 [6]
 The Government disingenuously contends that the evidence of the defendants' previous convictions would have been admissible irrespective of the 18 U.S.C. Sec. 922(g) charge under Fed.R.Evid. 404(b). The Government argues that the evidence would have been admissible as evidence of the defendants' plan or intent to rob the armored truck, which would have countered their defense that they had no plans to use firearms at Abington, and that the guns were planted in the van by the government's informant, Ryan. The Government fails to mention in its brief, however, that it did attempt to present prior crime evidence under Fed.R.Evid. 404(b), and that the court expressly refused to admit it. We see no merit to the Government's argument on appeal that the nature of the prior gun convictions would have been admissible under Fed.R.Evid. 404(b)
 
 
 [7]
 Murphy was also convicted of counts relating to the armored truck robbery in Fitchburg, Massachusetts. Under the circumstances of this case, we believe that the admission of the prior felony convictions infected all phases of this trial, and we reverse and remand Murphy's convictions on Counts 3, 4 and 6, as well as Counts 10, 11, 13-15