**UNITED STATES, Appellee,**

v.

**Terry Lynn COLLINS, Defendant–Appellant.**

**No. 94–1049.**

United States Court of Appeals, First Circuit.

Heard June 6, 1995.

Decided July 20, 1995.

---

Lawrence Rizman, Boston, MA, for appellant.

Michael Pelgro, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., and Ralph F. Boyd, Jr., Asst. U.S. Atty., Boston, MA, were on brief, for the U.S.

Before BOUDIN and LYNCH, Circuit Judges, and SCHWARZER,* Senior District Judge.

LYNCH, Circuit Judge.

Convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), Terry Lynn Collins received a sentence of more than 15 years (188 months) in prison. He appeals, claiming that his conviction should be reversed under *United States v. Tavares*, 21 F.3d 1 (1st Cir.1994) (en banc), in which this court, after Collins' trial, changed its rule concerning the admissibility of the nature of the prior felony conviction in prosecutions under § 922(g)(1). Collins also argues that the court abused its discretion in admitting as an "excited utterance" the statement of his intended victim and that overall the evidence is insufficient to support his conviction. His conviction is affirmed.

* Of the Northern District of California, sitting by designation.

First, the facts, as they were presented to the jury. Renewing an old and unfriendly acquaintance, Collins, leaning out of his car window, got into an escalating argument with Harry Albizu in front of Albizu's parents' home in Fitchburg on April 29, 1992. When Harry's hefty older brother appeared on the front steps, Collins drove off, yelling back to Harry, "I'll be right back. I'm gonna shoot your fuckin' ass." Apparently believing Collins to be a man of his word, an upset Harry Albizu hailed a police car, containing Fitchburg State College Police Officer Lord, told him of the threat, and Officer Lord radioed the Fitchburg police for help. Albizu's sister called the police in the meantime.

Sure enough, Collins returned shortly, in the Camaro he and his wife had just bought, and this time bringing two men with him. Collins yelled for Albizu to come out and out Albizu came, but only to the porch. Collins tried to entice Albizu down from the porch steps with various insults concerning Albizu's relationship with his mother. Albizu tried to persuade Collins to leave, but the weightlifting bar he threw at Collins missed.

Hearing police sirens approaching, Collins gestured to his two comrades. They put a long stick-like object that was wrapped up into the hatch of the Camaro. As the police arrived, Collins, still yelling at Albizu, backpedaled toward his car.

Police Officer Romano, as he patted down Collins at the side of the Camaro, saw shotgun shells on the back seat. The hatch door to the car was ajar. As Officer Romano looked in, he saw a pump shotgun in a partially zippered case next to two loose shotgun shells. The gun was fully loaded. A fishing license and fishing rods, also in the hatch, belonged to Collins. Officer Romano asked Collins if the shotgun was his. Collins replied sarcastically, "No. It's yours."

Collins was placed under arrest. Hearing that he was being arrested, an agitated Collins pointed at Albizu, and said to a police officer he knew, "Why am I being arrested? They've got guns too."

Simultaneously, Police Officer Raymond was interviewing Albizu. A visibly upset Albizu described the initial argument he had had with Collins, and quoted Collins' statement as described earlier.

The gun was owned by Collins' father, who kept it at his house, which was where Collins lived.

### The Tavares Claim

The prosecution at trial introduced, without objection, Collins' prior felony conviction for manslaughter and referred several times to the manslaughter conviction in argument. Collins' counsel did not offer to stipulate that Collins was a felon for purposes of § 922(g)(1). Indeed, under the law of this Circuit at the time of trial, the government would not have been required to accept such a stipulation. *See United States v. Collamore*, 868 F.2d 24, 28 (1st Cir.1989). Several months after Collins' trial, this Court changed that rule in *United States v. Tavares*, 21 F.3d 1, 5. *Tavares* "revisited this issue and determined that when a defendant is charged with being a felon-in-possession of a firearm, evidence of the nature of the prior conviction is not admissible unless special circumstances establish that the relevance of the evidence is 'sufficiently compelling to survive the balancing test of Fed.R.Evid. 403.'" *United States v. Lewis*, 40 F.3d 1325, 1342–43 (1st Cir.1994) (quoting *Tavares*, 21 F.3d at 5).

This Court has twice since applied *Tavares*. In *United States v. Melvin*, 27 F.3d 703 (1st Cir.1994), the court applied *Tavares* retroactively to cases pending on direct review where counsel had offered to stipulate. *Id.* at 706–07 n. 4. In *Melvin*, the court reversed, finding that the admission of the convictions on the facts was not harmless error. *Id.* at 709. In *United States v. Lewis*, 40 F.3d 1325 (1st Cir.1994), the court applied *Tavares* where defense counsel had offered to stipulate, but found that any error was harmless. *Id.* at 1342–43.

Hoping to benefit from *Tavares*, Collins attempts to shoehorn his arguments into categories that ill fit. He argues that he suffered from ineffective assistance of counsel because his counsel neither objected to nor offered to stipulate as to the manslaugh-

ter conviction.[1] But counsel made no error in light of the law at the time. The test for an ineffective assistance of counsel claim as articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is not met. Collins also argues that the admission of the conviction was barred by Fed.R.Evid. 403, as unduly prejudicial. Inasmuch as there was no objection, the normal standard of review for such a claim would be for plain error under Fed. R.Crim.P. 52(b), as explicated by the Supreme Court in *United States v. Olano,* — U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Counsel, though, can hardly be faulted for not objecting or for failing to stipulate, given the law at the time. Considerations of fairness also raise questions about the appropriate standard of review where the failure to object (or to stipulate) most likely was based on counsel's correct understanding of the law at the time.

In *United States v. Marder,* 48 F.3d 564 (1st Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 1441, 131 L.Ed.2d 320 (1995), this Court addressed an analogous situation. Without objection, the district court had instructed on the elements of the government's case in accordance with the law at the time. A subsequent Supreme Court decision made clear that an additional instruction on willfulness was required, to the effect that the jury had to find that the defendant knew the currency structuring in which he was engaged was unlawful. *Id.* at 572–73. This Court then faced the issue the *Olano* court specifically reserved: what happens "where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." *Id.* at 573 (quoting *Olano,* — U.S. at ——, 113 S.Ct. at 1777).

The *Marder* court applied plain error analysis. It is worth noting that *Marder* had less sympathy with counsel's failure to object and for good reason. At the time of trial, this Circuit's law foreshadowed the Supreme Court's decision and the precise issue had caused withdrawal of an opinion by this Court and reconsideration en banc. Counsel was on notice. *Id.* at 572 n. 5. The *Marder* court avoided analysis of issues that have divided other circuits on whether an "error" occasioned by a change in law was plain error and whether the defendant's substantial rights were affected[2] by turning to the last prong of the *Olano* analysis: whether the "error" "seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Id.* at 574 (quoting *Olano,* — U.S. at ——, 113 S.Ct. at 1779)). *Marder* held that a defective willfulness instruction did not have any of those effects, disagreeing with the views of three other circuits. *Id.* at 574–75. Applying that analysis here, the admission of the manslaughter conviction does not present even as serious a challenge as that posed in *Marder,* and certainly does not rise to the level required by *Olano.* *See also United States v. Gaudin,* — U.S. ——, —————, 115 S.Ct. 2310, —————, 132 L.Ed.2d 444 (1995) (Rehnquist, C.J., concurring); *United States v. Whiting,* 28 F.3d 1296, 1309 (1st Cir.), *cert. denied* — U.S. ——, 115 S.Ct. 378, 130 L.Ed.2d 328 (1994).

Even if we allow for the differences between the positions of counsel who failed to object in *Marder* and this case, it does not assist Collins. If there was any error here, regardless of who has the burden on prejudice, such error was not prejudicial. The district court on several occasions gave limiting instructions as to the manslaughter conviction, and the evidence of Collins' guilt was

---

1. This Court does not normally consider ineffective assistance of counsel claims on direct appeal. *See, e.g., United States v. Costa,* 890 F.2d 480, 482–83 (1st Cir.1989). When the record is sufficiently developed to allow analysis, however, an appellate court may determine the merits of such a contention on direct appeal. *See United States v. Natanel,* 938 F.2d 302, 309 (1st Cir. 1991), *cert. denied,* 502 U.S. 1079, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992). This case falls within the exception.

2. The Second Circuit has held that where the court has clarified the law, fairness requires that the burden on plain error analysis be shifted to the *government* to show that any error did not affect the defendant's substantial rights, varying from *Olano's* rule that in the usual plain error analysis the burden is on the *defendant* to show actual prejudice. *See United States v. Viola,* 35 F.3d 37, 42 (2d Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995).

overwhelming, including evidence from his own mouth.

*Excited Utterance*

■ Collins argues that the district court erred in admitting into evidence Albizu's statement to Officer Raymond that Collins had said, "I'll be right back. I'm gonna shoot your fuckin' ass." Collins argues that Albizu's testimony at trial—that the threat had been "I'm going to come back and get your ass"—did not confirm the statement. The variance does not make the statement inadmissible, but only raises questions of credibility for the jury to decide. *See United States v. Portalla,* 985 F.2d 621, 624 (1st Cir.1993).

■ The district court's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Bailey,* 834 F.2d 218, 228 (1st Cir.1987). The statement met the three pronged test under Fed.R.Evid. 803(2), *i.e.,* (i) the declarant experienced a startling event; (ii) the statement was made while the declarant was subject to the influence of the event; and (iii) the statement related to the event. *See id.* Albizu experienced the startling event of Collins threatening to return and shoot him. While Albizu was visibly upset and agitated, Albizu made his statement to Officer Raymond after Collins' second visit, earlier having made a similar statement to Officer Lord. The statement self-evidently related to the events at hand. The question for the district court was whether a jury could find the conditional fact upon which the relevancy of the statement turned (*i.e.,* whether Albizu made the statement) by a preponderance of the evidence. *Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988). There were sufficient indicia of reliability as to Officer Raymond's report. *See Portalla,* 985 F.2d at 624. Officer Raymond wrote Albizu's statement down verbatim, Albizu separately made a substantially similar excited utterance to Officer Lord, and Collins did return to resume the argument with a loaded shotgun.

*Sufficiency of the Evidence*

■ Collins argues that the government presented insufficient evidence to convict him of being a felon in possession of a firearm because he was a mere passenger in the car in which the firearm was found. This argument is without merit.

Our inquiry is whether there was evidence from which a rational trier of fact could conclude that Collins was guilty beyond a reasonable doubt. *See United States v. Moreno,* 991 F.2d 943, 944 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 457, 126 L.Ed.2d 389 (1994). Collins had a motive to possess the firearm, he had just had an argument with Albizu in which he had threatened to return and shoot Albizu, Collins did return in a car with a loaded shotgun and extra ammunition, Collins' friends moved the gun upon his gesture, the gun was kept in the house where Collins lived, and when arrested, Collins complained to the police that Albizu had guns *too.*

The conviction is *affirmed.*