**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert James ANDRINO, Defendant-Appellant.**

**No. 72-2141.**

United States Court of Appeals, Ninth Circuit.

May 8, 1974.

Rehearing Denied June 20, 1974.

John J. Flynn (argued), Michael D. Kimerer, Flynn, Kimerer, Thinnes & Galbraith, Phoenix, Ariz., for defendant-appellant.

Ronald A. Lebowitz (argued), William C. Smitherman, U. S. Atty., Dept. of Justice, Phoenix, Ariz., for plaintiff-appellee.

Before BARNES and HUFSTEDLER, Circuit Judges, and LUCAS,* District Judge.

LUCAS, District Judge:

This appeal is from Andrino's criminal convictions on twelve counts of violating Titles IV and VII of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 922(a)(6) and 924(a), and 18

---

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

U.S.C. App. § 1202(a)(1), respectively. Counts one through six alleged the making of false and fictitious statements in connection with the acquisition of a firearm in violation of sections 922(a)(6) and 924(a); count seven alleged the *receipt* by a convicted felon of firearms transported interstate in violation of section 1202(a)(1); and counts eight through twelve alleged the *possession* by a convicted felon of firearms transported interstate in violation of section 1202(a)(1).

Andrino was found guilty on all counts at trial by court, waiving special findings of fact. He was sentenced to serve two-year terms on each count, to be served concurrently, but to be served consecutively with the sentences imposed in two prior cases which have also been appealed.

The issues presented for review are as follows:

(1) Whether or not there is a jurisdictional basis for deciding this case. Differently stated, is the congressional grant of jurisdiction to the Federal courts, as required for successful prosecution under § 922(a)(6), a constitutional grant of jurisdiction;

(2) Whether the application of the California and Nevada expungement statutes to the respective State felony convictions operates as a bar to the application of the Federal criminal statutes in question by which Andrino was deemed to be convicted felon and under which he was convicted by the district court;

(3) Whether the Government's prosecution of Andrino whereby his name appeared as convicted felon on a list of selected suspects maintained for law enforcement purposes, constituted arbitrary discrimination contrary to the Due Process and Equal Protection Clauses of the Fourteenth Amendment; and,

(4) Whether the absence in the district court record of any showing of representation by counsel in the Nevada State trial, which convicted him on the charge of swindling, renders that conviction constitutionally suspect thereby precluding its usage as an element of the Federal offenses for which Andrino was convicted.

As previously indicated, counts I thru VI charge a violation of 18 U.S.C. § 922(a). 18 U.S.C. § 922(a) states:

"It shall be unlawful—

(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such importer, manufacturer, dealer or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter. . . ." (Chapter 44—Firearms).

Inherent in the basic jurisdictional issue is whether an interstate commerce nexus is required. 18 U.S.C. § 922(a)(6) contains no reference to interstate commerce.

The Supreme Court has now held that Congress intended to reach wholly intrastate transactions under 18 U.S.C. § 922(a)(6) and that Congress had the power to do so on the theory that such transactions affect interstate commerce:

"Finally, no interstate commerce nexus need be demonstrated. Congress intended, and properly so, that §§ 922(a)(6) and (d)(1), in contrast to 18 U.S.C. App. § 1202(a)(1), *see* United States v. Bass, *supra* [404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488], were to reach transactions that are wholly intrastate, as the Court of Appeals correctly reasoned: 'on the theory that such transactions affect interstate commerce.' 472 F.2d [592], at 593. *See* also United States v. Menna,

451 F.2d 982, 984 (CA9), cert. denied, 405 U.S. 963, [92 S.Ct. 1170, 31 L.Ed. 238] (1972), and United States v. O'Neill, 467 F.2d 1372, 1373–1374 (C.A.2 1972)." Huddleston v. United States (1974) 42 U.S.L.W. 4467, 4473, 415 U.S. 814, 94 S.Ct. 1262, 1273, 39 L.Ed.2d 782.

■ We must, therefore, consider the only other substantial question raised on this appeal—Is the defendant a convicted felon, as that term is used in 18 U.S.C. § 922(a)(6), § 924(a), or 18 U.S.C. App. § 1202(a)(1)?

Andrino's prior State convictions were for conspiring to commit acts of prostitution in California, and for swindling in Nevada, on October 6, 1959, and on January 4, 1963, respectively. Subsequently, on three separate occasions (June 18, 1970, August 19, 1970, and August 26, 1970) Andrino purchased several firearms from various licensed gun dealers in Arizona. At the time of those purchases, he signed Firearms Transaction Records certifying that he had not been convicted of any crime punishable by a term of imprisonment exceeding one year.

Andrino argues that, as a result of the application of the California and Nevada expungement statutes, Cal.Penal Code, § 1203.4,[1] and Nev.Rev.Stat., § 176.225 (1967),[2] and that, as a result of his belief that he would "never have to be called an exconvict or an exfelon" again, he could not have made the requisite false and fictitious statements on the firearms' registration forms for which he was convicted under sections 922(a)(6) and 924(a). He cited People v. Taylor, 178 Cal.App.2d 472, 3 Cal. Rptr. 186 (1960) for the proposition that a defendant could not be successfully charged with a violation of Cal.Penal Code, § 12021,[3] prohibiting convicted fel-

---

1. Section 1203.4, as amended in 1970, reads in part:

"(a) Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or has been discharged from probation prior to the termination of the period thereof shall, at any time thereafter, if he is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and he shall thereafter be released from all penalties and disabilities resulting from the offense of which he has been convicted. . . ."

"Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess or have in his custody or control any firearm capable of being concealed upon the person or prevent his conviction under Section 12021."

. . . .

2. Section 176.225 reads in part:

"1. Every defendant who:

(a) Has fulfilled the conditions of his probation for the entire period thereof; or

(b) Is recommended for earlier discharge by the chief parole and probation officer; or

(c) Has demonstrated his fitness for honorable discharge but because of economic hardship, verified by a parole and probation officer, has been unable to make restitution as ordered by the court, may at any time thereafter be permitted by the court to withdraw his plea of guilty or nolo contendere and enter a plea of not guilty; or, if he has been convicted after a plea of not guilty the court may set aside the verdict of guilty; and in either case, the court shall thereupon dismiss the indictment or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted."

3. Section 12021 reads in part:

"Any person . . . who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country . . . who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison not exceeding 15 years, or in a county jail not exceeding one year or by a fine not exceeding five hundred dollars ($500), or by both."

ons from possessing firearms, in view of the relief available under the California expungement statute. However, the California legislature amended section 1203.4 in 1961 to provide, in a second paragraph, that dismissal of an accusation under this section does not permit a person to "own, possess or have in his custody or control any firearm capable of being concealed upon the person or prevent his conviction under Section 12021." Andrino's expungement occurred *after* this legislative amendment. Thus, the California legislature, by specific enactment, has negated the very theory under California law by which Andrino seeks to demonstrate the absence of a requisite element for the Federal conviction in question. Conceding this implication, Andrino nevertheless asserts that the California legislature did not specifically exclude from relief under section 1203.4 the particular offense in question—giving false or fictitious statements to a licensed firearms dealer in connection with the acquisition of small arms. This reasoning is erro-

neous inasmuch as the expungement statute retains a provision that persons may not own, possess or control small arms, and states that its application does not negate the applicability of the concealable firearms statute, section 12021. *Cf.* United States v. Hoctor, 487 F.2d 270 (9th Cir., 1973).[4] Since this analysis suffices to answer Andrino's contention on this particular point, a similar analysis of the Nevada expungement statute is unnecessary, and perhaps inappropriate in any event inasmuch as the Nevada courts have not passed upon the question.[5]

■ Finally, with respect to the contention that Andrino alleged a "good faith" belief in the effectiveness of the purge of the State convictions, the facts are strongly weighted against him. The record suggests ambiguity at best as to Andrino's recollection of the California expungement hearing. Furthermore, Andrino had executed a Felon Registration Form for the Phoenix police *subsequent* to the three occasions which led to the indictment in this case. Issues as to

---

4. *Hoctor* can be distinguished in important particulars. The Washington expungement statute, Wash.Rev.Code § 9.95.240 (1957), was given much broader application than section 1203.4. *Hoctor* noted that the Washington Supreme Court had construed section 9.95.240 to restore a felon's " 'preconviction status as a full-fledged citizen,' " Matsen v. Kaiser, 74 Wash.2d 231, 237, 443 P.2d 843, 846–847 (1968) (concurring opinion), and that the Attorney General of Washington had stated that the provisions of Wash.Rev.Code § 9.41.040 (1935), prohibiting certain convicted felons from owning or carrying pistols, do not apply to one who has gained the benefits of section 9.95.240. In direct contrast, the California legislature amended section 1203.4 to expressly provide that the dismissal of an accusation does not permit a person to own, possess or control firearms concealable on the person, or prevent a conviction under section 12021. *See* discussion, *supra.* Thus, the two States are at direct variance in treating this particular problem under their laws. Since the determination of Andrino's status under California law is quite clear in that he should be deemed *not* exempt from liability under the expungement statute, the remaining question posed and resolved in *Hoctor* as to a Federal and Washington State conflict is avoided.

In that case, the Government sought to demonstrate that the application of the Washington expungement statute did not affect the reach of 18 U.S.C. § 842(i). (This section falls within Chapter 40—Importation, Manufacture, Distribution and Storage of Explosive Materials, 18 U.S.C. §§ 841–848, which provides an enforcement scheme analogous to that in Chapter 44—Firearms, 18 U.S.C. §§ 921–928, under which Andrino was convicted.) *Hoctor* found that 18 U.S. C. § 848 demonstrated Congress' intent not to preempt this particular field to the exclusion of the States unless a "direct and positive conflict" existed between the Federal and State enforcement schemes. 18 U.S.C. § 848; *see also* 18 U.S.C. § 928. It further found that what differences did exist between Chapter 40 and the Washington statute were not irreconcilable. Therefore, in light of congressional intent not to override prior State law extant in the field, expressly provided in section 848, this Court in *Hoctor* deemed the application of section 9.95.240, as construed by Washington authorities, to be dispositive of the facts in that case.

5. But cf. Tsimbidy-Rochu v. Immigration & Naturalization Service, 414 F.2d 797, 798 (9th Cir., 1969).

the credibility of Andrino's testimony concerning the California expungement hearing, and evidentiary conflicts as to what transpired during the signing of the registration form in Phoenix were resolved by the district court. It is not for the appellate court to reconsider them, or to substitute its inferences pertaining to witnesses' demeanor or to their testimony. United States v. Nelson, 419 F.2d 1237, 1241 (9th Cir., 1969); *but cf.* United States v. Squires, 440 F.2d 859, 865 (2nd Cir., 1971).

■ Andrino's third contention on appeal is that the Government's maintenance of his name on a "watch list" of possible suspects was an arbitrary act of discrimination unsupportable under the Fourteenth Amendment. Andrino's basic discriminatory classification argument was raised in an analogous context in United States v. Thoresen, 428 F.2d 654 (9th Cir., 1970) where appellants contested their convictions under section 2(e) of the Federal Firearms Act, ch. 850, § 2(e), 52 Stat. 1250, 1251 (1938), since repealed by the Omnibus Crime Control and Safe Streets Act of 1968. Laws regulating the purchase of firearms by persons previously convicted of felonious crimes are well within those cases establishing a rational basis for State limitation of personal rights, and such classification is particularly consistent with sound principles where, as under the Federal Firearms Act [*see* 26 C.F.R. § 177.31(c) (1966)] the 1968 Act provides means by which a classified person may apply for relief from the disabilities imposed thereunder [*see* 18 U.S.C. § 925(c)]. *See* United States v. Thoresen, *supra* at 658–660; United States v. Synnes, 438 F.2d 764, 771–772 (8th Cir., 1971); vacated on other grounds. 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972); *see also* United States v. Karnes, 437 F.2d 284, 289 (9th Cir., 1971); cert. denied, 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430 (1971).

■■ Andrino's final contention on appeal is that the absence of any state-ment in the district court record of any representation by counsel in the Nevada State trial resulting in the ˋconviction for swindling renders that conviction invalid for purposes of application under section 1202(a)(1). Andrino's position is untenable. Not only did he fail to raise an objection in the district court as to the admissibility of the Government's record of the Nevada conviction, but Andrino introduced a certified record of the Nevada expungement proceedings, which was predicated upon the validity of the Government's exhibit, tending to authenticate the original swindling conviction. The stipulation as to the authenticity and the sufficiency of the Government's document alone is fatal to consideration of this issue for the first time on appeal. Estrella v. United States, 429 F.2d 397, 399 (9th Cir., 1970); cert. denied 400 U.S. 1011, 91 S.Ct. 575, 27 L.Ed.2d 624 (1971); Benson v. United States, 402 F.2d 576, 580–581 (9th Cir., 1968). The embracement of this document as part of the defense's case below makes an attack upon its authenticity and sufficiency on appeal a meritless point. In any event, aside from the theoretical possibility of error in defense counsel's trial tactics in waiving objection, any error is deemed to have been harmless in the face of the evidence presented, and particularly in light of the California conviction's separate applicability under section 1202(a)(1). Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Further, thru our utilization of the concurrent-sentence doctrine, resolution of this issue is mooted.

■ Because the defendant was convicted on each of twelve counts, and received the same sentence on each, which were to be served *concurrently*, we need not, for the convenience of the Court decide the validity of the convictions in counts seven to twelve, inclusive. *See* United States v. Gaines, 460 F.2d 176 (2d Cir., 1972). The judgment of conviction as to counts one thru six is affirmed.