**UNITED STATES of America, Appellee,**

v.

**Robert G. SMITH, Appellant.**

No. 75–1186.

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1975.

Decided July 31, 1975.

Charles J. Brady, St. Paul, Minn., for appellant.

Joseph Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before BRIGHT, Circuit Judge, KILKENNY, Senior Circuit Judge,* and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

Following a jury trial Robert G. Smith, defendant below, was convicted of having unlawfully received a firearm that had moved in interstate commerce, 18 U.S.C. App. § 1202(a)(1). He appeals contending that the district court[1] committed reversible error in admitting certain evidence without a cautionary instruction and that he was denied a fair trial by reason of certain allegedly prejudicial statements made by counsel for the Government in the closing arguments. We affirm.

The one count indictment charged that on or about July 19, 1974 the defendant, after having been convicted of two federal felonies, unlawfully received a .38 caliber Colt revolver in violation of the statute heretofore mentioned.

The facts pertinent to this appeal may be summarized as follows:

As of mid-July, 1974 the defendant had been twice convicted of felonies in federal court. In 1961 he was convicted of the armed robbery of a savings and loan association; and in 1970 he was convicted of the interstate transportation of a firearm by a convicted felon. The second conviction was predicated on the first. At the time with which we are concerned, defendant was a federal parolee with respect to his second conviction. His local parole officer was William L. Johnson.

The defendant has a nephew, Oliver Smith, Jr., who in 1974 also had a felony record, having been convicted of first degree robbery in Missouri in 1968.

During the early morning hours of July 18, 1974 the two men were patrons of a bar in St. Paul, Minnesota that had unlawfully remained open after closing hours. The two men were standing in close proximity to each other when members of the St. Paul Police Department raided the bar. According to the testimony of one of the officers, while the raid was in progress the officer observed the defendant make certain movements with his hands, which movements were followed by the sound of an object dropping to the floor, and the pistol in question was observed at the feet of the defendant.

At the trial of the case the Government contended that the defendant had been the man in possession of the gun; the defense was that Oliver Smith, Jr. had been in possession of it and in an effort to rid himself of it had tossed it in the direction of the defendant. The evi-

* John F. Kilkenny, Senior Circuit Judge, Ninth Circuit, sitting by designation.

1. Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

dence as to which of the men had been in possession of the weapon was conflicting and made a jury question which was resolved adversely to the defendant.[2] No claim is made that the evidence was not sufficient to sustain the conviction.

The incident in the bar resulted in the arrest of the defendant and the filing of criminal charges against him in the Municipal Court at St. Paul. On the day after his arrest the defendant and Oliver appeared at the office of Parole Officer Johnson. The defendant in the presence of his nephew voluntarily stated that the gun was the property of the nephew, and that the defendant had simply been holding it for his nephew when the officers entered the bar. According to the testimony of Officer Johnson, Oliver Smith nodded confirmation of those statements made by the defendant.

A few days later the defendant appeared in the Municipal Court, and his nephew was with him. In the course of the proceedings Oliver Smith made an unsworn statement to the effect that the gun had been in his possession and that he dropped it when the officers entered the bar. The Municipal Court Reporter transcribed that statement.

At the trial of the case the Government made its oral proof tending to show that the defendant had been the individual in possession of the pistol. The Government then offered to introduce an authenticated copy of the judgment and sentence of the United States District Court for the Southern District of Iowa, filed on November 6, 1970, adjudging that the defendant was guilty of having unlawfully transported in interstate commerce from Minneapolis, Minnesota to Des Moines, Iowa a certain .32 caliber revolver after having been previously convicted of a crime punishable by imprisonment for a term in excess of one year, namely, the robbery of a savings and loan association. The judgment reflected that the defendant had been found guilty after a jury trial. He was sentenced to imprisonment for a term of five years under the provisions of 18 U.S.C. § 4208(a)(2).

The defendant objected to the introduction of this item of evidence and in lieu thereof offered to stipulate generally that the jury might take it as established that the defendant had a felony record, and alternatively offered to stipulate the fact of the 1961 conviction upon which the 1970 conviction had been based. The Government declined to accept either of those stipulations and was permitted to introduce the authenticated copy of the 1970 judgment of the federal court in Iowa.

After the Government rested the defendant called a number of witnesses for the purpose of showing that he had not been in possession of the gun. The defendant did not take the stand in his own behalf.

Prior to the commencement of the trial defendant caused a witness subpoena to be served on Oliver Smith. When he was first called as a witness, he did not respond. However, he later appeared in court accompanied by counsel. The defendant then called him as a witness, and in the course of a proceeding in chambers and out of the presence of the jury Oliver Smith, on advice of counsel, invoked his Fifth Amendment privilege against self-incrimination and was not required to testify. Oliver Smith did remain in the courtroom for at least part of the trial, and his presence was called to the attention of certain witnesses by defense counsel in the presence of the jury.

After Oliver Smith refused to testify, the defendant was permitted to introduce in evidence as a declaration against

---

**2.** The parties stipulated as to the necessary nexus between the gun and interstate commerce, and the Government was permitted to prove the 1970 conviction of the defendant that has been described.

interest the transcript of the unsworn statement that Oliver had made in the Municipal Court.

There was no question that Oliver had been convicted of a felony, and the Government introduced without objection an authenticated copy of the judgment of the Circuit Court of Jackson County, Missouri, entered in 1968, whereby Oliver Smith, Jr. was convicted of the crime of first degree burglary and was sentenced to imprisonment for a term of five years.

The testimony having been concluded, the district court advised counsel in general terms of the instructions that the court proposed to give to the jury; the case was argued and submitted to the jury on instructions which fully and fairly stated the applicable law. As indicated, the jury found the defendant guilty.

In urging reversal the defendant contends, first, that the district court erred in admitting the evidence of defendant's 1970 conviction without giving the jury a cautionary instruction limiting the purpose for which the evidence might be considered by the jury. We disagree.

■ In order to make a case under § 1202(a)(1) the Government was required to establish by one means or another the fact that the defendant had been convicted of at least one prior felony. *United States v. Glasgow,* 478 F.2d 850 (8th Cir.), *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973); *United States v. Mancino,* 474 F.2d 1240 (8th Cir.), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3020, 37 L.Ed.2d 1007 (1973).

■ We do not think, however, that the Government was required to accept in lieu of proof either of the defendant's proffered stipulations. *United States v. Brickey,* 426 F.2d 680, 686 (8th Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970), and cases there cited. And, we do not think that in a case of this kind the Government is necessarily limited to establishing only one prior conviction where there has been a plurality of convictions. In *United States v. Matthews,* 453 F.2d 1237 (8th Cir. 1972), this court held that it was not error for the trial court to read to the jury an indictment which, like the one in this case, charged two prior felony convictions. And in *United States v. Andrino,* 497 F.2d 1103 (9th Cir. 1974), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 621, 42 L.Ed.2d 642 (1975), it was held that any error in admitting evidence of one particular conviction was rendered harmless by the fact that the evidence satisfactorily established a second conviction.

■ With particular regard to the willingness of the defendant to stipulate as to the 1961 conviction, we do not think that by his offer to so stipulate the defendant could force the Government to rely on a conviction that was some fourteen years old rather than on one which was less than five years old, particularly since the defendant was trying to place the possession of the gun in his nephew who had been convicted of an intervening serious felony as recently as 1968.

■ While a case can be supposed in which it might be prejudicial to permit the Government in a case like this to prove a plurality of convictions when legally required to prove only one, we are satisfied that this is not such a case and that the defendant was not substantially prejudiced by the introduction of the 1970 judgment. The judgment was introduced in a routine manner, and it does not appear that it was read to the jury or that the jury read it. While counsel for the Government mentioned once or twice in the course of his argument the fact that defendant had been convicted twice, he laid no emphasis on that fact, and no emphasis was laid on it at any other point of the trial. The record does not reveal that the district court read the indictment to the jury panel in the course of qualifying the trial jurors, and it is clear that it was not read as part of the instructions. At no

point in the charge was the jury told that defendant had been convicted twice. The jury was simply told that defendant's felony record and the relationship between the gun and interstate commerce had been established, and that the real question for the jury to decide was which of the two men who have been mentioned was in possession of the gun.

██ Defendant's complaint that no limiting instruction was given to the jury with respect to the evidence of the 1970 conviction may be disposed of shortly by saying that no such instruction was requested. Had an appropriate request been made, we think that it would have been up to the district court in the exercise of its discretion to determine whether the instruction should be given. While limiting instructions may at times be helpful to a defendant, they can also be harmful. Certainly, we do not think that the failure of the district court to give such an instruction on its own motion was "plain error" cognizable under Fed.R.Crim.P. 52(b). We do not consider *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), or *United States v. McClain*, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971), cited by defendant, to be in point.

██ In his closing argument counsel for the Government properly sought to support the testimony of the Government's witnesses and to discredit the evidence put forward by the defendant, including the extrajudicial statement of Oliver Smith, Jr. We have considered the text of Government counsel's arguments and find that counsel did not exceed permissible limits, nor did his comments amount to improper references to the fact that the defendant had not testified or to the fact that testimony had not been elicited from Oliver Smith, Jr. With one exception presently to be mentioned, the remarks of Government counsel of which defendant now complains were not the subject of any objections in the course of the arguments and defense counsel did not request any cautionary instructions relating to the statements of Government counsel.

At a very early stage in his opening argument counsel for the Government stated that in evaluating the evidence it was the duty of the jurors to compare their views and to come up with a "total image," and that their verdict would be a "group solution." Defense counsel immediately objected to those statements as telling or suggesting to the jury that its verdict might or should be based on compromise. When the objection was made, the district court advised the jury that the court would instruct as to the law and that the jury should disregard what counsel had to say about the law.

██ Conceding that the statements in question were perhaps unfortunate, they did not mislead the jury or prejudice the defendant. In his own closing argument counsel for the defendant made it clear that before a verdict of guilty properly could be returned, each juror must be convinced in his own mind by the evidence and beyond a reasonable doubt that the defendant was guilty. And in its instructions the jury was told that before it could convict, it must be convinced of the guilt of the defendant beyond a reasonable doubt, and that its verdict must be unanimous. While the transcript does not reflect what colloquy between court and jury took place when the verdict was returned, presumably the experienced district judge who presided at the trial ascertained before accepting the verdict that the individual jurors concurred in it.

Affirmed.