50 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory Tyree HENDERSON, Defendant-Appellant.
 No. 94-5645.
 United States Court of Appeals, Sixth Circuit.
 March 21, 1995.
 
 Before: JONES and MILBURN, Circuit Judges, and COHN,* District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Gregory Tyree Henderson appeals his jury conviction and sentence for carjacking in violation of 18 U.S.C. Sec. 2119, use of a firearm during a crime of violence in violation of 18 U.S.C. Sec. 924(c)(1), and possession of a firearm by a convicted felon in violation of 18 U.S.C. Sec. 922(g). On appeal, the issues are (1) whether the district court abused its discretion by denying defendant's motion to sever count 4, felon in possession of a firearm; (2) whether the district court abused its discretion by admitting into evidence an identification card displaying defendant's photograph but bearing a different name; (3) whether the district court properly denied defendant's motion for judgment of acquittal or for a new trial based on the recantation of a witness and the alleged erroneous identification of defendant by a police officer; (4) whether the district court abused its discretion by amending the time at which disclosures under Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 12.1 were to be made; and (5) whether the district court abused its discretion by allowing the use of the term "carjacking" in the presence of the jury. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 The carjacking incident that is the basis of the charges in this case took place late in the evening on June 7, 1993, at 5105 Yaupon Lane in the Newburg area of Jefferson County, Kentucky. The automobile that was carjacked was a black 1977 Chevrolet Caprice Classic that belonged to 20-year-old Terry Masden. The victims were 20-year-old Latisha Beasley, Terry Masden's girlfriend, her two-year-old son DeAndre, and 17-year-old Chris Evans.
 
 
 3
 Shortly before the carjacking, defendant, codefendant Timothy Terrell Ballanger, and another person had been driving around the Newburg area in a yellow 1980 Chevrolet Caprice Classic. They stopped in front of Beasley's home to talk to Masden about his black Caprice, which Masden was attempting to sell. Later that evening, Masden, Beasley, Beasley's son, and Evans drove to the home of David McElvaney, who lived at 5105 Yaupon Lane. Masden got out of the car; Beasley remained seated in the front passenger seat, and Beasley's son and Evans remained seated in the back seat.
 
 
 4
 While Beasley was sitting in Masden's car, she saw a yellow Caprice, which she believed was the same one she had seen defendant in earlier, drive by. The automobile pulled around the corner onto a side street and stopped. Beasley then saw two black males walk around the corner and approach Masden's car, one of whom she recognized as defendant, the person she had seen talking with Masden earlier that day. Beasley testified that defendant was carrying what appeared to be a sawed-off pump-type shotgun, which was suspended by a strap of some kind. Defendant walked to the passenger side of the vehicle, where Beasley was seated, and pointed the gun at her through the open window. Defendant told her to get out, so she slid across the front seat and jumped out of the driver's side of the car. The other carjacker, who had a shiny object by his side that appeared to be a pistol, then got into the driver's seat. Evans grabbed Beasley's son and got out of the back seat of the car. Beasley ran and hid in McElvaney's car, which was parked on the street, and Evans took Beasley's son and walked to a big oak tree in McElvaney's yard.
 
 
 5
 Masden and McElvaney were standing on the porch in front of McElvaney's house when the yellow Caprice drove by. McElvaney had seen Masden talking to the occupants of a yellow Caprice earlier in the evening, and he believed that the automobile that drove by his house was the same one he had seen earlier. Masden and McElvaney both saw the carjackers as they came around the corner and approached Masden's car. Masden exclaimed that he recognized one or both of them, but neither of the carjackers replied. Masden testified that defendant was carrying what he believed was a sawed-off shotgun and that Ballanger was carrying a small-caliber chrome pistol, which he believed was a .380.
 
 
 6
 After the carjackers got in Masden's car, they backed it out of the driveway. As they came parallel to McElvaney's car, where Beasley was hiding, one of them fired a shotgun blast into the door of that car. After the carjackers left the scene, the police were called, and several officers responded. The victims immediately identified defendant and Ballanger as suspects, and warrants were issued for their arrest.
 
 
 7
 On June 8, 1993, Ballanger was arrested at his home. Ballanger's wife agreed to lead detectives to defendant's home. Ballanger's wife drove her car, and Ballanger accompanied the detectives, who followed in an unmarked police car. When the detectives arrived at defendant's home, they began surveillance while waiting for backup. They observed a blue Oldsmobile driven by a woman, who was later identified as defendant's aunt, back out of the driveway. Because they suspected that the Oldsmobile contained defendant, they followed it. When they saw a black male, whom they believed was defendant, sit up in the back seat, they gave chase. After attempting to evade the police, the Oldsmobile suddenly stopped on a side street, and a black male, identified by Detective Larry Duncan as defendant, jumped out of the Oldsmobile and ran. Although another detective ran after him, defendant was not caught. Ballanger, who remained in the unmarked police car during the chase, also identified the black male who was in the back of the Oldsmobile as defendant. The detectives returned to defendant's house, where they had previously seen the yellow Caprice parked, and had it towed.
 
 
 8
 On June 9, 1993, Ballanger went to the tow-in lot to retrieve his yellow Caprice, and the police conducted a consent search of the car. Detective Bishop found a locking lug nut, which later proved to have the same configuration as the other lug nuts and a lug nut key belonging to Masden. Masden's black Caprice was also recovered that day, and two locking lug nuts that had been in the glove box when the automobile was stolen were missing. Defendant's fingerprint was also lifted from inside the passenger window of Masden's recovered car.
 
 
 9
 In addition to the locking lug nut, the police found several items belonging to defendant in the yellow Caprice. Those items included a California photographic identification card bearing the name Bernard Woodson, but with a photograph of defendant affixed to it; a Pacific Bell telephone credit card, also in the name of Bernard Woodson; a paycheck from Bay Area Community Services of Oakland, California, payable to defendant; a "Bay Area Any Time" check-cashing card bearing defendant's signature; assorted keys on a keychain; and a receipt for a Western Union money transfer showing a transfer of $1000 from Ballanger to defendant's brother, Terrence Miles, the day after the carjacking.
 
 
 10
 Within a few days of the carjacking, Masden gave defendant's sister, Nikki Miles, a written statement recanting his prior identification of defendant and Ballanger as the two carjackers. In the statement, Masden stated that it was dark and that he could not really see who committed the carjacking. Masden agreed in the written statement that he would not testify at trial. When the police learned that Masden had given Nikki Miles the statement, they interviewed him and confirmed that Masden's prior identification had been truthful and that he had given the written statement to avoid any trouble. Masden testified at trial that he "just wanted [his] car back.... [He] didn't want any trouble, didn't want to press no [sic] charges." J.A. 206.
 
 
 11
 Defendant testified at trial and denied any involvement in the carjacking. He acknowledged being in the Newburg area with Ballanger and his cousin, Kenneth Miles, during the period shortly before the carjacking. However, defendant testified that at the time of the carjacking, they were at Kenneth Miles' residence across town. Defendant also denied running from the police the day after the carjacking.
 
 
 12
 Ballanger also testified that at the time of the carjacking, he was at Kenneth Miles' residence across town. Kenneth Miles testified as an alibi witness for defendant and Ballanger. In addition, to corroborate defendant's alibi defense, Nikki Miles testified that she had telephoned defendant at Kenneth Miles' home within a short time after the carjacking.
 
 B.
 
 13
 On September 7, 1993, the grand jury issued a three-count indictment, naming defendant Gregory Tyree Henderson in two of the counts and naming codefendant Timothy Terrell Ballanger in two of the counts. Count one charged defendant with carjacking--that is, taking by force, violence and intimidation, while possessing firearms, a motor vehicle that had been transported, shipped, and received in interstate commerce--in violation of 18 U.S.C. Sec. 2119. Count two charged defendant with using a firearm in relation to a crime of violence in violation of 18 U.S.C. Sec. 924(c)(1). Defendant was arraigned on December 14, 1993, and pleas of not guilty were entered on defendant's behalf on December 15, 1993.
 
 
 14
 On January 4, 1994, the grand jury issued a five-count superseding indictment, naming defendant in three of the counts and naming Ballanger in three of the counts. Counts one and two of the superseding indictment mirrored counts one and two of the original indictment. Count four of the superseding indictment charged defendant with being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g). On February 8, 1994, defendant waived the formalities of arraignment, and not guilty pleas were entered on his behalf as to the charges in the superseding indictment.
 
 
 15
 On January 21, 1994, defendant filed a motion to sever count four of the superseding indictment, arguing that joinder of the offenses in one trial would prejudice him. After further proceedings held on February 4, 1994, the district court took the motion to sever under advisement. The district court did not grant the motion to sever, and the case went to the jury on all counts.
 
 
 16
 A jury trial commenced on February 14, 1994. On February 22, 1994, the jury returned verdicts of guilty against defendant on all three counts. On March 31, 1994, defendant made a motion for judgment of acquittal or, in the alternative, a new trial. This motion was denied by the district court on April 15, 1994. On May 2, 1994, a sentencing hearing was held, and defendant was sentenced to a total of 120 months imprisonment. This timely appeal followed.
 
 II.
 A.
 
 17
 Defendant argues that the district court improperly failed to sever the felon in possession of a firearm count from the other counts charged in the superseding indictment. Specifically, defendant asserts that disclosure of his prior felony conviction was sufficiently prejudicial to require severance under Fed.R.Crim.P. 14 because allowing the jury to hear testimony that he was a convicted felon when deciding his culpability for the remaining counts of the superseding indictment permitted the jurors to assume that defendant possessed a predilection toward engaging in criminal activity. Defendant acknowledges that the district court has discretion to determine whether there is sufficient prejudice to warrant separate trials.
 
 
 18
 Fed.R.Crim.P. 14, entitled "Relief from Prejudicial Joinder," provides in relevant part: "If it appears that a defendant ... is prejudiced by a joinder of offenses ... in an indictment ... or by such joinder for trial together, the court may order an election or separate trials of counts ... or provide whatever other relief justice requires." "The decision to grant or deny a motion for severance pursuant to Fed.R.Crim.P. 14 rests within the district court's sound discretion. We will not disturb the district court's denial of a Rule 14 motion for severance absent an abuse of discretion." United States v. Blakeney, 942 F.2d 1001, 1011 (6th Cir.), cert. denied, 112 S.Ct. 646 (1991), and cert. denied, 112 S.Ct. 881 (1992); United States v. Tarnowski, 583 F.2d 903, 906 (6th Cir.1978), cert. denied, 440 U.S. 918 (1979). "Defendants bear a heavy burden of showing that specific and compelling prejudice resulted from the joint trial and that such prejudice could have been rectified only by separate trials." United States v. Sivils, 960 F.2d 587, 594 (6th Cir.), cert. denied, 113 S.Ct. 130 (1992); see Blakeney, 942 F.2d at 1011 (requiring a " 'strong showing of prejudice' " to establish an abuse of discretion) (quoting United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986)).
 
 
 19
 Defendant claims prejudice resulted because "the jury was permitted to cumulatively consider the history of previous criminal acts while making a decision in the present case that, if considered separately, may not have resulted in a finding of guilt." Appellant's Brief at 8 (citing United States v. Lewis, 626 F.2d 940, 945 (D.C.Cir.1980)). However, defendant points to nothing in the record indicating that the jury's finding of guilt would have been different had the counts been severed. In fact, quite the opposite is true. At three time during the trial--when the district court gave its preliminary instructions to the jury, when proof of defendant's prior felony convictions was admitted into evidence, and when the district court gave its instructions to the jury before it retired for deliberation--the district court gave a limiting instruction cautioning the jury against considering that evidence for any purpose except determining defendant's guilt on the count for felon in possession. "Where jurors are so instructed, courts presume that the jurors understood and followed the directions given." Sivils, 960 F.2d at 594. Accordingly, we find no error in the district court's failure to grant severance.
 
 
 20
 Moreover, even if defendant established some potential prejudice or jury confusion, "this must be balanced against society's need for speedy and efficient trials." United States v. Lloyd, 10 F.3d 1197, 1215 (6th Cir.1993), cert. denied, 114 S.Ct. 1569, and cert. denied, 114 S.Ct. 2172, and cert. denied, 115 S.Ct. 219 (1994). Absent a showing of substantial potential for prejudice, all counts charged in the indictment are normally tried together where they all "arose out of the same, uninterrupted series of transactions, making it highly efficient to try all of them together." United States v. Joshua, 976 F.2d 844, 847 (3d Cir.1992). Therefore, we hold that the district court did not abuse its discretion by denying defendant's Rule 14 motion to sever.[1]
 
 
 21
 In connection with the above, we address an additional argument that was not raised in the district court or in defendant's briefs to this court but which was made at oral argument. Relying on United States v. Tavares, 21 F.3d 1 (1st Cir.1994), defendant argued that the district court should have forced the government to accept defendant's offer to stipulate as to his status as a convicted felon for purposes of count two, or alternatively, the district court should have considered alternatives to allowing the government to introduce evidence that defendant had been convicted of prior felony. On the facts before us, defendant's new arguments are not persuasive. The record in this case indicates that defendant sought to keep the fact of his prior conviction from the jury all together--he wanted the district court specifically to submit to the jury only the issue of whether defendant was in the possession of a firearm. With regard to the issue of defendant's being a felon in possession of firearm, defendant wanted to have that issue and the underlying offense determined by the district court in the absence of the jury. However, as Tavares stated, "a defendant may not use a stipulation or any other procedural device ... to remove from his felon-in-possession prosecution that fact of his prior conviction." Tavares, 21 F.3d at 3. Similarly, we have consistently held that the government cannot be required to accept a defendant's offer to stipulate an element of the charged offense and is entitled to prove every element of the crime. See United States v. Blackburn, 592 F.2d 300, 301 (6th Cir.1979); United States v. Burkhart, 545 F.2d 14, 15 (6th Cir.1976). Tavares held that the government is required to accept a defendant's stipulation as to his status as a convicted felon, but the government must to allowed to present the fact of the defendant's prior conviction to the jury. Tavares, 21 F.3d at 3-4. In this case, defendant's offer was not merely to stipulate as to his status as a convicted felon; he wanted to keep the fact of his prior conviction from the jury all together. Thus, this case is distinguishable from Tavares. Accordingly, defendant's argument relating to his offered "stipulation" is meritless.
 
 B.
 
 22
 Defendant argues that the district court improperly allowed the introduction of an identification card displaying defendant's photograph but reflecting a different name. Defendant concedes that the identification card was relevant and admissible, but asserts that the identification card should have been excluded pursuant to Federal Rules of Evidence ("Fed.R.Evid.") 404(b) and 403 because its probative value is substantially outweighed by the danger of unfair prejudice since it would be indicative of a crime not charged in the indictment, namely, carrying false identification. Defendant argues that it was not necessary to admit the identification card and that admitting it served no purpose other than to inflame and prejudice the jury.
 
 
 23
 Under Fed.R.Evid. 404(b),[2] evidence of prior misconduct is not admissible to prove the character of a person or another crime, but it is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. United States v. Largent, 545 F.2d 1039, 1043 (6th Cir.1976), cert. denied, 429 U.S. 1098 (1977). In addition, pursuant to Fed.R.Evid. 403,[3] the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. Largent, 545 F.2d at 1043. "As the permissive language in [Fed.R.Evid. 403] indicates, the decision to admit relevant, but potentially prejudicial, evidence is committed to the sound discretion of the trial court." United States v. Moore, 917 F.2d 215, 233 (6th Cir.1990), cert. denied, 499 U.S. 963 (1991). "The trial court's determination should not be disturbed absent a clear abuse of discretion." United States v. Seago, 930 F.2d 482, 494 (6th Cir.1991). "In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving 'the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' " Moore, 917 F.2d at 233 (quoting 1 J. Weinstein & M. Berger, Weinstein's Evidence p 403 (1982)).
 
 
 24
 Because defendant concedes that the identification card is relevant and admissible, our sole inquiry is whether the district court abused its discretion under Fed.R.Evid. 403 by admitting the identification card into evidence. At the hearing on the motion in limine to exclude the identification card, the government argued that the identification card with defendant's photograph established a link between defendant and the yellow Caprice that dropped off the carjackers. Additionally, because the identification card bore the name of Bernard Woodson, it linked defendant to the calling card bearing that name that was also found in the car. After hearing arguments from both defendant and the government, the district court stated that it did not think the identification card was "prejudicial particularly" and explicitly found that the probative value of the identification card outweighed any prejudicial effect. J.A. 89. At trial, the district court admonished the jury that they could not consider the identification card as evidence that defendant committed the offenses charged in the indictment and that they could only consider the identification card as evidence of defendant's connection to the yellow Caprice. Therefore, any risk of unfair prejudice was certainly minimized, and we hold that the district court did not abuse its discretion under Fed.R.Evid. 403 by admitting the identification card into evidence.
 
 C.
 
 25
 Defendant argues that the district court erred in failing to grant his post-trial motions for judgment of acquittal, or in the alternative, a new trial, based upon the recantation of witness Terry Masden and the erroneous identification of defendant by Detective Larry Duncan. In support of his post-trial motions, defendant relied on the affidavits of two persons that, according to defendant, "go to the very heart of whether the testimony produced by the government is sufficient to sustain the conviction of [defendant]." Appellant's Reply Brief at 9. Those affidavits, which were submitted after trial of the case, consisted of one from Masden and one from Kenneth Williams, a friend and associate of defendant.
 
 
 26
 In his affidavit, Masden stated that he did not actually recognize the carjackers as defendant and Ballanger but assumed it was them because of the presence of the yellow Caprice. The affidavit stated that Masden placed a telephone call to Nikki Miles immediately after the carjacking to tell her that defendant and Ballanger had taken his car, which directly contradicts Masden's trial testimony. Masden's affidavit stated that Masden also advised Latisha Beasley that he thought it was defendant and Ballanger who had taken the automobile and that Beasley did not say whether she recognized the carjackers. The affidavit also stated that defendant had been in Masden's automobile on at least one occasion, which would provide a possible explanation for the presence of defendant's fingerprint in the black Caprice.
 
 
 27
 In Williams' affidavit, Williams claims to have been the black male who left defendant's house with defendant's aunt in the blue Oldsmobile. He further stated he was the person who fled on foot after having been followed by a police car, because he was afraid of being arrested.
 
 
 28
 (1)
 
 
 29
 This court reviews a district court's denial of a motion for judgment of acquittal de novo. United States v. Gibson, 896 F.2d 206, 209 (6th Cir.1990). Under Fed.R.Crim.P. 29, the only recognized basis for granting a motion for judgment of acquittal is insufficiency of the evidence. Fed.R.Crim.P. 29(a). "The standard is whether the government had introduced evidence sufficient for any rational trier of fact to convict, viewing the evidence and all reasonable inferences in the light most favorable to the government." Gibson, 896 F.2d at 209. In addition, we are prohibited from assessing the credibility of witnesses in reviewing a district court's denial of a motion for judgment of acquittal. This court has stated:
 
 
 30
 There is no place ... for arguments regarding a government witness' lack of credibility in a Rule 29 motion for acquittal before a federal trial judge. A trial judge considering a Rule 29 motion may neither weigh conflicting evidence nor consider the credibility of witnesses. For example, the Seventh Circuit held in United States v. Blasco, 581 F.2d 681, 684-85 (7th Cir.1978), cert. denied, 439 U.S. 966 (1978), that the trial judge there erred in granting a judgment of acquittal after the jury returned a guilty verdict. The trial judge granted the Rule 29 motion on the basis of his personal conviction that the government's witnesses were unbelievable. The Seventh Circuit held, however, that since there was sufficient evidence to convict the defendants as charged if the jury chose to believe the testimony of the government witnesses, and since the jury had been properly instructed as to its role in assessing witness credibility, the jury verdict must stand. Blasco, 581 F.2d at 684-85. To hold otherwise would be to allow the trial judge to invade the province of the jury as the sole finder of fact in a jury trial.
 
 
 31
 With trial judges precluded from assessing witness credibility when considering Rule 29 motions, it is only logical that appellate courts reviewing denials of such motions also must share in the same prohibition....
 
 
 32
 In holding that the trial judge properly denied the motions to acquit made on behalf of each defendant, we stress that attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.... Evidence may be held insufficient, therefore warranting taking the case from the jury, only if the government's case lacks evidence in support of one or more elements of the offense charged.
 
 
 33
 United States v. Adamo, 742 F.2d 927, 934-35 (6th Cir.1984) (emphasis in original) (parallel citations omitted), cert. denied, 469 U.S. 1193 (1985).
 
 
 34
 In this case, the affidavit of Masden suggests that Masden's identification of defendant as one of the carjackers may have been erroneous and that Beasley's identification of defendant as one of the carjackers may have been contrived. Thus, the affidavit does nothing more than call into question the credibility of the trial testimony of Masden and Beasley. Williams' affidavit merely challenged Duncan's identification of defendant as the person whom he saw fleeing from the automobile driven by defendant's aunt. However, the government had the statements of Ballanger identifying defendant as the person running from the automobile. Thus, because both affidavits go only to the quality of the government's evidence and because we are prohibited from assessing the credibility of the witnesses, we cannot say that one witness' testimony should be disregarded in favor of another witness' testimony. Viewing the evidence in the light most favorable to the government, we think that even if the jury had been presented with the information in the affidavits, the government had still introduced evidence sufficient for a jury to convict. Accordingly, the district court's denial of defendant's motion for judgment of acquittal was proper.
 
 
 35
 (2)
 
 
 36
 "Motions for a new trial based on newly discovered evidence are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent 'clear abuse of discretion.' " United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986) (quoting United States v. Allen, 748 F.2d 334, 337 (6th Cir.1984) (per curiam)), cert. denied, 484 U.S. 859 (1987). Moreover, an affidavit by a recanting witness, when offered in support of a motion for a new trial, is viewed with extreme suspicion. United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir.1991), cert. denied, 112 S.Ct. 1217, and cert. denied, 112 S.Ct. 1680 (1992). For the discovery of new evidence to warrant a new trial, a defendant must show the following:
 
 
 37
 (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce acquittal.
 
 
 38
 United States v. Seago, 930 F.2d 482, 488 (6th Cir.1991) (citing O'Dell, 805 F.2d at 640).
 
 
 39
 Defendant argues that the affidavit of Williams constituted new evidence that warranted a new trial. However, defendant has offered no explanation, other than a conclusory statement, as to why the information contained in Williams' affidavit was not available at trial or could not have been discovered in the exercise of due diligence at the time of trial. As the government points out, defendant had ample notice that the government would present evidence on how defendant escaped from the police after being driven away from his home by his aunt. Moreover, defendant offers no legitimate explanation why his own aunt did not testify at trial as to who was in her automobile. Thus, defendant's unsupported claim that his family was hiding the identity of the person is not sufficient because his aunt could have been subpoenaed. In addition, no evidence is offered showing that defendant attempted to locate Williams or serve him with process in time for the trial. Because defendant has not shown that the information in the affidavits could not have been discovered earlier with due diligence, defendant has not demonstrated that the Williams affidavit satisfies the Seago test. Therefore, a new trial based on this alleged new evidence is not warranted.
 
 
 40
 Defendant argues that the affidavit of Masden also constituted new evidence that warranted the district court ordering a new trial. Masden's affidavit addresses four separate factual issues. First, the affidavit states that Masden did not actually recognize the carjackers but that he assumed they were defendant and Ballanger because of the presence of the yellow Caprice; however, as stated in the affidavit, this proof is no different than Masden's trial testimony, and therefore it cannot be considered new evidence. Second, the affidavit stated that Masden placed a telephone call to Nikki Miles, which is directly contrary to Masden's trial testimony. Thus, because we must view this affidavit with extreme suspicion, and no reason is offered to explain why this information was not elicited by defendant at trial, we cannot say that the district court clearly abused its discretion by not ordering a new trial based on this evidence. Third, the affidavit described Masden's conversations with Beasley; however, this evidence is merely impeachment evidence and again no reason is offered why it was not elicited by defendant at trial. Finally, Masden's affidavit offered a possible explanation for the presence of defendant's fingerprint in Masden's automobile; however, the jury still could have believed that the fingerprint got inside the passenger window when defendant forced Beasley out of the automobile. In addition, there is other evidence, including Masden's unique locking lug nut that was found in the yellow Caprice, that would be sufficient to sustain defendant's conviction. Therefore, defendant has again failed to demonstrate that the Seago test is satisfied. Accordingly, the district court did not abuse its discretion by denying defendant's motion for a new trial.
 
 D.
 
 41
 Defendant next argues the district court erred by ordering a modification of the time for compliance with the alibi notice requirements of Fed.R.Crim.P. 12.1. Defendant acknowledges that the district court had the discretion to direct a different time frame for compliance but argues that the exchange in this particular case was manifestly unfair and prejudicial.
 
 
 42
 Fed.R.Crim.P. 12.1 is the notice of alibi rule. Upon the government's request, a defendant, within 10 days, must give notice of his intention to offer an alibi defense, including the names and addresses of any defense witnesses on the alibi issue. Fed.R.Crim.Proc. 12.1(a). The government, within 10 days of receiving the notice of alibi defense, but no later than 10 days before trial, must respond with a notice disclosing the names and addresses of any government witnesses on the alibi issue. Fed.R.Crim.P. 12.1(b). However, regardless of the time requirements imposed in subdivisions (a) and (b), the district court is expressly authorized to direct a different time frame for compliance with the notice of alibi requirements. See Fed.R.Crim.P. 12.1(a), (b).
 
 
 43
 On February 4, 1994, only 10 days before trial was scheduled to begin on February 14, 1994, the government sent to defendant via facsimile a written demand for notice of his intent to offer an alibi. The government states that only after proceedings that took place on that date did it become clear that despite numerous pretrial setbacks, the trial would go forward as originally scheduled. On February 7, 1994, defendant responded and identified Kenneth Miles as an alibi witness. Defendant indicated that he would not waive the requirement under Fed.R.Crim.P. 12.1(b) that the government disclose its rebuttal witnesses not less than 10 days before trial. Rather than seek a continuance of the trial to allow strict compliance with the ten-days-before-trial requirement, the government filed a motion to modify the time for compliance. The district court granted the motion, allowing the government until February 11, 1994, three days before the trial was to commence, to disclose any government alibi witnesses. At the time the motion was granted, the government indicated that it had no witnesses to rebut the alibi testimony of Miles, and the government did not produce any rebuttal witnesses during the trial. Therefore, defendant could not have suffered any prejudice by the district court's modification of the time for the government's compliance with the alibi notice requirement of Fed.R.Crim.P. 12.1. Thus, the district court did not abuse its discretion in granting the time modification.
 
 
 44
 Defendant also argues that the government has not shown good cause for granting an exception under Fed.R.Crim.P. 12.1(e). Under subdivision (e) of Fed.R.Crim.P. 12.1, the district court may, "[f]or good cause shown," grant an exception to the requirements of subdivisions (a) through (d) of the rule. Fed.R.Crim.P. 12.1(e); United States v. Wood, 780 F.2d 555, 560 (6th Cir.) (per curiam), cert. denied, 475 U.S. 1111 (1986). However, we need not address whether good cause has been shown because the district court has the authority under subdivisions (a) and (b) to direct a different time frame for compliance with the requirements of those subdivisions.[4] See Fed.R.Crim.P. 12.1(a), (b).
 
 E.
 
 45
 Finally, defendant argues that the district court abused its discretion by allowing the use of the term "carjacking" in the presence of the jury. Defendant claims that because 18 U.S.C. Sec. 2119 does not incorporate the term "carjacking," the district court's use of the term "carjacking" to describe the offense charged in the case "only served to inflame and prejudice the jury." Appellant's Brief at 21.
 
 
 46
 A district court has broad discretion in determining the manner in which it conducts trial, and the district court's use of the term carjacking was within the district court's trial management authority. We review a district court's decisions on matters of trial management for an abuse of discretion. United States v. Cashin, 991 F.2d 796, 1993 WL 106847, at * 10 (6th Cir.) (unpublished disposition), cert. denied, 114 S.Ct. 179 (1993); United States v. Goode, 814 F.2d 1353, 1354 (9th Cir.1987).
 
 
 47
 Although 18 U.S.C. Sec. 2119 does not use the term carjacking, the statute is commonly referred to as the "carjacking statute." See 18 U.S.C. Sec. 2119. Moreover, the term carjacking has evolved as the legal term of art to describe the offense of armed robbery of a motor vehicle, see United States v. Jones, 34 F.3d 596, 598 (8th Cir.1994), petition for cert. filed, --- U.S.L.W. ---- (U.S. Dec. 15, 1994) (No. 94-7281); United States v. Johnson, 32 F.3d 82, 83 (4th Cir.), cert. denied, 115 S.Ct. 650 (1994); United States v. Mohammed, 27 F.3d 815, 817 (2d Cir.), cert. denied, 115 S.Ct. 451 (1994); United States v. Harris, 25 F.3d 1275, 1276 (5th Cir.), cert. denied, 115 S.Ct. 458 (1994); United States v. Johnson, 22 F.3d 106, 107 (6th Cir.1994); United States v. Robertson, 21 F.3d 1030, 1033 (10th Cir.), cert. denied, 115 S.Ct. 238 (1994), and we know of no better way of referring to the offense. We are convinced that the term carjacking is no more prejudicial than the phrase armed robbery of a motor vehicle; in fact, using the phrase "armed robbery of a motor vehicle" throughout an entire trial would surely be more confusing and prejudicial than using the term "carjacking." Moreover, even if the term were potentially prejudicial, it does not appear that it was so unfairly prejudicial that it deprived defendant of a fundamentally fair trial, particularly because the jury was clearly instructed as to the elements of a violation of 18 U.S.C. Sec. 2119. Accordingly, we hold that the district court did not abuse its discretion by allowing the use of the term carjacking in the presence of the jury.
 
 III.
 
 48
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 49
 COHN, District Judge, concurring.
 
 
 50
 I agree with everything Judge Milburn says. However, I believe that the trial judge should have been more aggressive in dealing with the issue of allowing the jury to know the particular felony which was the predicate for the felon in possession of a firearm count. There is simply no need for the jury to have that information. Knowledge that defendant has a felony conviction is sufficient. See United States v. Tavares, 21 F.3d 1, 4 (1st Cir.1994) ("the fact of a prior conviction ... is the only information that Congress has deemed of consequence concerning the defendant's criminal record" in the context of a felon in possession of a firearm case).
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendant relies on three cases from other jurisdictions in support of his Rule 14 motion to sever. See United States v. Daniels, 770 F.2d 1111, 1118 (D.C.Cir.1985); United States v. Busic, 587 F.2d 577, 584-85 (3d Cir.1978), rev'd, 446 U.S. 398 (1980); United States v. Desantis, 802 F.Supp. 794, 801-03 (E.D.N.Y.1992). None of these cases are controlling, two are inapposite, and we do not choose to follow them
 
 
 [2]
 Fed.R.Evid. 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request of the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
 
 
 [3]
 Fed.R.Evid. 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 [4]
 We are only saying that "good cause" need not be shown where the modification under Fed.R.Crim.P. 12.1 relates to the time, rather than the substance or contents, of the notice